[No. 8035.    Department Two.    March 27, 1911.]

J. W. O'BRIEN, *Respondent* v. WESTERN UNION TELEGRAPH
COMPANY, *Appellant*.[1]

TELEGRAPHS—LEASE OF WIRE—CONDITIONS.    A telegraph company
may make it a condition of the lease of a wire that operators em-
ployed by the lessee shall be satisfactory to the company.

MASTER AND SERVANT—EMPLOYMENT—CAUSING DISCHARGE—LIA-
BILITY—TELEGRAPHS.    A telegraph company leasing one of its lines
on the condition that the lessee should employ operators satisfactory
to it is not liable to an operator for causing his discharge, regard-
less of improper motives; since the company had the right to say
who should use its property.

SAME—BLACKLISTING.    Rem. & Bal. Code, § 6565, against blacklist-
ing is not violated by objection to the employment of a person, where
such person is required to use the objector's property.

Appeal from a judgment of the superior court for King
county, Gay, J., entered February 1, 1909, upon the verdict
of a jury rendered in favor of the plaintiff, in an action on
contract.    Reversed.

*Harold Preston*, for appellant, contended, *inter alia*, that
at common law it is not a tort to induce one man not to

[1]Reported in 114 Pac. 441.

employ another.  The hiring was for an indefinite period, and no action can be maintained at common law for wrongfully procuring a discharge.  *Frank v. Manhattan etc. Dispensary,* 107 N. Y. Supp. 404; *Martin v. New York Life Ins. Co.,* 148 N. Y. 117, 42 N. E. 416; *Holder v. Cannon Mfg. Co.,* 138 N. C. 308, 50 S. E. 681; *McGuire v. Gerstley,* 204 U. S. 489.  The lease containing an express stipulation that plaintiff's employer might employ no person to handle or operate the leased property who was not satisfactory to the defendant, the action will not lie; the discharge was pursuant to a lawful agreement between the parties.  Cooley, Torts (1st ed.), p. 81; *Banks v. Eastern R. & Lumber Co.,* 46 Wash. 610, 90 Pac. 1048, 11 L. R. A. (N. S.) 485; *Lewis v. Huie-Hodge Lumber Co.,* 121 La. 658, 46 South. 685; *Raycroft v. Tayntor,* 68 Vt. 219, 35 Atl. 53, 54 Am. St. 882, 33 L. R. A. 225; *Curran v. Galen,* 152 N. Y. 33, 46 N. E. 297, 57 Am. St. 496, 37 L. R. A. 802; *Knickerbocker Ice Co. v. Gardiner Dairy Co.,* 107 Md. 556, 69 Atl. 405, 16 L. R. A. (N. S.) 746; *Chipley v. Atkinson,* 23 Fla. 206, 1 South. 934, 11 Am. St. 367; *Perkins v. Pendleton,* 90 Me. 166, 38 Atl. 96, 60 Am. St. 252; *Walker v. Cronin,* 107 Mass. 555; *Biggers v. Matthews,* 147 N. C. 299, 61 S. E. 55; *London Guarantee & Accident Co. v. Horn,* 206 Ill. 493, 69 N. E. 526, 99 Am. St. 185; *Id.,* 101 Ill. App. 362. The act being in the exercise of a clear legal right, the motive prompting such act is immaterial.  *Auburn etc. Plank Road Co. v. Douglass,* 9 N. Y. 444; *Boyson v. Thorn,* 98 Cal. 578, 33 Pac. 492, 21 L. R. A. 233; Cooley, Torts (1st ed.), p. 688; *Lancaster v. Hamburger,* 70 Ohio St. 156, 71 N. E. 289, 65 L. R. A. 856; *Bohn Mfg. Co. v. Hollis,* 54 Minn. 223, 55 N. W. 1119, 40 Am. St. 319, 21 L. R. A. 337; *Parkinson Co. v. Building Trades Council,* 154 Cal. 581, 98 Pac. 1027, 21 L. R. A. (N. S.) 550; *Stevenson v. Newnham,* 13 C. B. 297; *Sparks v. McCreary,* 156 Ala. 382, 47 South. 332, 22 L. R. A. (N. S.) 1224; *Keeble v. Hickeringill,* 11 East 574; *Glendon Iron Co. v. Uhler,* 75 Pa. St.

467, 15 Am. Rep. 599; *Adler v. Fenton,* 24 How. (U. S.) 407.

*Beverly L. Hodghead (George H. Fearons,* of counsel), for appellant, contended, among other things, that the law as construed by the court in this case would deprive defendant absolutely of the right of liberty of contract because it would deprive it of the right of enforcing such contract. McGhee, Due Process of Law, p. 140; *Holden v. Hardy,* 169 U. S. 366; *Patterson v. Bark Eudora,* 190 U. S. 169; *Williams v. Fears,* 179 U. S. 270; *United States v. Joint Traffic Association,* 171 U. S. 505, 572; *American Steel & Wire Co. v. Wire Drawers etc. Unions,* 90 Fed. 613. Any interference with the right to make reasonable contracts is a violation of the 5th and 14th amendments to the Federal constitution. *Mathews v. People,* 202 Ill. 389, 67 N. E. 28, 95 Am. St. 241, 63 L. R. A. 73; *Commonwealth v. Perry,* 155 Mass. 117, 28 N. E. 1126, 31 Am. St. 533, 14 L. R. A. 325; *Shaver v. Pennsylvania Co.,* 71 Fed. 931; *Brennan v. United Hatters of North America,* 73 N. J. L. 729, 65 Alt. 165, 118 Am. St. 727, 9 L. R. A. (N. S.) 254; *Gillespie v. People,* 188 Ill. 176, 58 N. E. 1007, 80 Am. St. 176, 52 L. R. A. 283; *Ritchie v. People,* 155 Ill. 98, 40 N. E. 454, 46 Am. St. 315, 29 L. R. A. 79; *Adair v. United States,* 208 U. S. 161. It is within the contract and sufficient that plaintiff was "not satisfactory" to defendants, and immaterial that he was a good workman. *Gwynne v. Hitchner,* 66 N. J. L. 97, 48 Atl. 571.

*Geo. McKay,* for respondent, contended, among other things, that the plaintiff had the constitutional right to engage in the pursuit of any lawful occupation and remain undisturbed in the performance of it. *Keeble v. Hickeringill,* 11 East 574; *Curran v. Galen,* 152 N. Y. 33, 46 N. E. 297, 57 Am. St. 496, 37 L. R. A. 802; *Berry v. Donovan,* 188 Mass. 353, 74 N. E. 603, 108 Am. St. 499, 5 L. R. A. (N. S.) 899. The condition in the contract as construed by the

defendant (viz., as conferring an absolute right to require the dismissal of any employee) is in derogation of the demise and is therefore void. *Dorrell v. Collins*, Cro. Eliz. (K. B.) 6, 78 Eng. Rep. 273; *Horneby v. Clifton*, 3 Dyer (K. B.) 264, 73 Eng. Rep. 586; *Pynchon v. Stearns*, 11 Met. (Mass.) 312, 45 Am. Dec. 210; *Chippewa Lumber Co. v. Tremper*, 75 Mich. 36, 42 N. W. 532, 13 Am. St. 420, 4 L. R. A. 373. It is not necessary where one maliciously procures the discharge of a servant, that "the impulse of malice" should be actual, wicked vindictiveness; it is enough that the purpose is illegal. 18 Harvard Law Review, p. 411; *Klingerl's Pharmacy v. Sharp*, 104 Md. 218, 64 Atl. 1029, 118 Am. St. 399, 7 L. R. A. (N. S.) 976.

*Thomas B. MacMahon*, for respondent, contended, *inter alia*, that if one maliciously interferes in a contract between two parties, and induces one of them to break that contract, to the injury of the other, the party injured can maintain an action against the wrongdoer. 16 Am. & Eng. Ency. Law (2d ed), p. 1110; *Angle v. Chicago etc. R. Co.*, 151 U. S. 1; *Chipley v. Atkinson*, 23 Fla. 218; *Jones v. Stanly*, 76 N. C. 355; *Jackson v. Stanfield*, 137 Ind. 592, 36 N. E. 345, 37 N. E. 14, 23 L. R. A. 588; *Walker v. Cronin*, 107 Mass. 555.

PER CURIAM.—In December, 1907, the appellant, Western Union Telegraph Company, leased for a period of years one of its wires running from San Francisco to Bellingham, together with its necessary equipment, to the United Press, an association having for its business the collection and dissemination of news. The contract of lease contained a number of conditions, among which were the following: the exclusive use of the wire was granted only for certain hours of the day, the remainder of the time it was to be subject to use by the telegraph company for its general business; the telegraph company was to keep the wire and its equipment in repair, and if for any cause the same became out of repair so as to be

incapable of transmitting messages, to furnish another equipped wire during the time of such incapacity; the news company was to furnish at its own expense the necessary operators to take care of the news company's business and the necessary office room, giving the telegraph company's office force access thereto for the purpose of inspection; it was expressly provided that the operators so employed should be satisfactory to the telegraph company and subject to its established rules and regulations; and that for a violation of any part of the agreement, the telegraph company had the power to terminate the same upon ten days' notice.

Among the patrons of the United Press was the Bellingham Herald, a newspaper published at Bellingham, Washington. In the publishing rooms of this paper the news company established an office, and the telegraph company connected the leased wire therewith by extending a loop thereto from its main office at Bellingham, and the respondent O'Brien was employed by the United Press as an operator for the office in the Herald's rooms. He worked but a short time, however, until his employment was made known to the telegraph company's officers, who immediately requested his discharge on the ground that he was not satisfactory to the company. The request was granted after some correspondence, and the respondent was afterwards refused employment in other newspaper offices receiving news over the wires of the telegraph company.

The respondent was employed in the Herald office after the contract between the news company and the telegraph company had been entered into and after its terms had been made known to him. His contract of employment called for no fixed term, and he was subject to be discharged at any time at the will of the news company. His work at the Herald office, however, was satisfactory to the news company—in fact it is conceded that he is a skilled operator with ample experience—and he was discharged solely because the telegraph company required it. After his discharge and after he had

been refused employment in other offices controlled by the ap-
pellant, he brought the present action against it to recover in
damages, alleging that the appellant's acts in procuring his
discharge from the employment secured, and refusing to per-
mit him to be employed elsewhere in offices which it controlled
were malicious, wrongful and illegal, and were done with the
intent to injure him. Issue was taken upon the allegations of
the complaint, and a trial had before the court sitting with a
jury.

During the progress of the trial the court charged the
jury to the effect that if they found that the telegraph com-
pany acted wilfully and maliciously in procuring the dis-
charge of the respondent, and in preventing him from pro-
curing employment in the other offices over which it had con-
trol, then they might find in his favor in such damages as in
their judgment he had suffered thereby, not exceeding the
amount claimed in the complaint. The jury entered a verdict
in his favor for the sum of $1,200. A judgment was entered
thereon, from which this appeal is prosecuted.

We are of the opinion that the judgment is erroneous.
The property which the respondent was employed to operate
was the property of the appellant, and, under all authority,
it was competent for the appellant on leasing it to make it a
condition of the contract that no one should be employed to
operate it who was not satisfactory to the appellant. And
having power to make this a condition of the lease, it has the
right to enforce it, without laying itself liable in damages to
any one. It matters not what its motives may be in any
given case. These are not to be inquired into. Since the
right is absolute it may exercise it at its pleasure, without
the duty of giving reasons or otherwise explaining its conduct.

But it is suggested that the appellant's acts in the partic-
ular case were in violation of the statute against blacklisting.
Rem. & Bal. Code, § 6565. An examination of that statute,
however, will show that it has no reference to the right of a
person to object to the employment of another where the

other is required to use the objector's property. It was intended to prevent the wilful and malicious attempts by one person to prevent another from obtaining any employment of any kind. Here the appellant did not object to the respondent working for persons or companies where he was not compelled to use the appellant's property. On the contrary, there was not only no evidence that it had ever interfered in such a case, but the record shows affirmatively that it had no desire to do so; it objected merely to the respondent's being employed where he would have access to the wires which the appellant owned. In so doing it acted within its rights and incurred no liability thereby.

The judgment appealed from is reversed, and remanded with instructions to dismiss the action.

MORRIS, J., took no part.