[No. 2877–2.   Division Two.   August 7, 1978.]

JOHN JOSEPH MAKOVINEY, ET AL, *Appellants,* v. FLOYD SVINTH, ET AL, *Respondents.*

*Samuel J. Allotta,* for appellants.

*M. Margaret McKeown, William A. Gould, Perkins, Coie, Stone, Olsen & Williams,* and *James M. Stewart* (of *Stewart & Thomas*), for respondents.

SOULE, J.—The plaintiffs brought an action against defendants for personal injuries sustained by the plaintiff, John Makoviney, while on the premises of the Montesano Equipment Company, which is owned by the defendants Svinth. The case was tried to the court without a jury. By agreement of counsel, the liability portion of the case was separated from that relating to damages. At the end of all the evidence pertaining to liability, judgment was rendered for the defendants.[1] We affirm the judgment.

For ease of reference, the injured plaintiff, John Makoviney, will hereafter be referred to as if he were the only plaintiff. Several assignments of error relate to the refusal of the court to admit certain evidence. Error is also assigned to the refusal of the court to grant a continuance and to the court's failure to find for the plaintiff on the issue of negligence. No exceptions were taken to the findings of fact.

The plaintiff lived near Dayton in Mason County.[2] On January 28, 1972, he drove to the defendant's place of business to keep an appointment with Bill Trenckmann, one of defendant's salesmen. His purpose was to purchase a crawler tractor. It is stipulated that he was a business invitee.

After the negotiations and paperwork were completed, Trenckmann invited plaintiff to inspect the machine more closely. To do so, it was necessary to leave the building and go into the outside yard. The route traversed was through

---

[1]Defendant, John Deere Company, Inc., was dismissed before trial.

[2]Distances and the relationship of several geographic points are of importance in understanding certain aspects of this case. The trial judge expressed general familiarity with the area but the testimony concerning distances is fragmentary and appears to be at best, approximate. We therefore have taken the liberty of

the shop and through a large equipment door on the west side of the shop near the south corner of the building. The west wall is a gable end. The roof is rather sharply pitched from north to south and has an overhang of about 3 feet. The building is of uninsulated wood frame construction covered with sheet metal.

It is conceded that there was snow on the ground and on the roof. How much, how long it had been there and under what conditions, is a matter of dispute. The roof was covered with frozen snow or ice but there is no contention that visible ice in icicle form was hanging from the eaves.

As plaintiff and Trenckmann left the shop and closed the large door behind them, some of the frozen snow or ice slipped. A substantial amount of it came over the edge of the eave, rather than sliding straight down the slope. It dropped upon them both. Plaintiff received the major blow, but Trenckmann was also struck.

After recovering from the blow, both men went on to inspect the equipment. In a short time, perhaps 5 to 10 minutes, they reentered the shop building and went to the lunchroom area, where one of the incidents occurred which forms a basis of this appeal.

Error is assigned to the refusal of the trial court to permit the plaintiff to testify to the following:

---

noting the following information concerning *airline* distances. The indicated distances are scaled from a highway map published by the Washington State Highway Commission, 1975 edition.

| Point to Point | Approximate Distance | Direction |
|---|---|---|
| Montesano to Hoquiam | 15 miles | West of Montesano |
| Montesano to Shelton | 27 miles | Northeast of Montesano |
| Montesano to Dayton | 25 miles | Northeast of Montesano |
| Shelton to Dayton | 5 miles | West of Shelton |
| Shelton to Matlock | 15 miles | West of Shelton and slightly north |
| Dayton to Matlock | 9 miles | West of Dayton |
| Montesano to Matlock | 20 miles | North and slightly east of Montesano |

Okay. We went into the coffee shop and the guys all come in and sat down and had their coffee. And Bill and I walked in and said that I just got hit by a large piece of ice outside. And my head was bleeding so the secretary, I don't know her name, went and got a bandage or washcloth or something to wipe my head off, because like any head wound or scratch it will bleed pretty good, and they asked me how I felt and I said: "I feel like, you know, I got a headache." So they went and got me some aspirin. And while they was doing all this they were all kind of laughing and joking. They weren't laughing because I got hurt. They were laughing at the coincidence. They said they should have had that ice knocked off that roof that morning before they opened the place of business.

Plaintiff asserts that the testimony was properly admissible under the res gestae exception to the rule against hearsay to prove that the material on the roof constituted a known dangerous condition.

The basis for this exception to the rule against hearsay is found in the fact that under certain external circumstances of physical shock, a stress of nervous excitement may be produced which stills the reflective faculties and removes their control so that the utterance which then occurs, is a spontaneous and sincere response to the actual sensations and perceptions already produced by the external shock. 6 J. Wigmore, *Evidence* § 1747 (rev. ed. J. Chadbourn (1976)). It is for this reason that the exception is sometimes called the "excited utterance" exception.

The authoritative decision in our jurisdiction on this subject is *Beck v. Dye,* 200 Wash. 1, 92 P.2d 1113 (1939). The criteria for admission of evidence under this exception were set forth therein on pages 9–10:

A careful examination of those cases, read chronologically and as a whole, will reveal that the rule as adopted, declared, and followed by this court requires that the statement or declaration concerning which testimony is offered must, in order to make such evidence admissible, possess at least the following essential elements: (1) The statement or declaration made must relate to the main event and must explain, elucidate, or in some way characterize that event; (2) it must be a natural declaration

or statement growing out of the event, and not a mere narrative of a past, completed affair; (3) it must be a statement of fact, and not the mere expression of an opinion; (4) it must be a spontaneous or instinctive utterance of thought, dominated or evoked by the transaction or occurrence itself, and not the product of premeditation, reflection, or design; (5) while the declaration or statement need not be coincident or contemporaneous with the occurrence of the event, it must be made at such time and under such circumstances as will exclude the presumption that it is the result of deliberation, and (6) it must appear that the declaration or statement was made by one who either participated in the transaction or witnessed the act or fact concerning which the declaration or statement was made.

Measured against these standards, at least three problems are apparent.

1. Are the words, "they said they should have had that ice knocked off that roof that morning before they opened the place of business," a statement of fact or merely of opinion? Clearly, the words do not pertain to an act that was done. Rather, they express the thought of the unidentified declarant that something should have been done. As such, they are a statement of opinion given in the light of hindsight.

2. Did the declarant participate in or witness the main transaction or fact concerning which the declaration was made? There is no suggestion that the declarant saw the accident. Plaintiff, however, argues that the pertinent transaction or "main event" is the dangerous condition of the roof because of the snow and ice upon it and therefore is admissible to prove declarant's preexisting knowledge of that condition.

Appellant does not suggest that Trenckmann was the declarant. There is no evidence that the unknown declarant made the statement based on his prior personal observations of conditions on the south sloping roof. Admittedly, plaintiff's problem is complicated by the fact that the declarant was unidentified, but the party offering the evidence has the burden of showing that the declarant has the

requisite personal knowledge. Absent that showing, the declaration suffers the same infirmity as that offered by the plaintiff through the policeman in *Beck v. Dye, supra.*

3. Was the statement a spontaneous or instinctive utterance of thought dominated or evoked by the transaction or occurrence itself and not the product of premeditation, reflection or design? It is difficult to answer this question categorically. Under the circumstances where the plaintiff was receiving minor first aid, some stress of the excitement of the original incident may well have persisted, but the declarant had not been subject to the acute excitement of the occasion. Moreover, the situation was an appropriate one for expressions of sympathy and regret, and these considerations could easily have motivated the remarks.

Plaintiff's situation is not even as strong as that of the plaintiff in *Zukowsky v. Brown,* 1 Wn. App. 94, 459 P.2d 964 (1969), *aff'd,* 79 Wn.2d 586, 488 P.2d 269 (1971). There, plaintiff brought an action for injury suffered when the seat of a boat collapsed. The plaintiff offered to prove through another witness that the son of the defendant boat owner, who was in the nearby area when the accident occurred and within 5 minutes of the event and after learning of what had happened, said, "Well, that doesn't surprise me. That happened twice before." This was plainly a statement of fact. In upholding exclusion of that evidence, the appellate court said on page 103:

> In no sense of the word can it be said that the defendant's teen-age son was "under the influence of the event." He was neither a witness nor a non-witness participant. He was so far removed from the event that he had to inquire subsequently as to what transpired. The court properly refused to admit the declarant's statement through another witness.

Because practical problems exist in the application of the res gestae exception, our court has recognized that the determination of whether the testimony is admissible rests within the sound discretion of the trial court. *Brewer v. Copeland,* 86 Wn.2d 58, 542 P.2d 445 (1975). We find no

abuse of discretion in refusing to admit this testimony under the res gestae exception.

Plaintiff next urges that if the statement was not admissible under the res gestae exception, it was admissible as an admission by silence. Plaintiff bases his contention on the fact that the employee in charge that day was William Schaletzke. Plaintiff asserts that Schaletzke was present in the lunchroom when the statement was made; that he remained silent when it was made and that therefore, he acquiesced in it. For the purpose of this decision we will assume that the authority of Schaletzke extended to making statements regarding the event.

*Beck v. Dye* stated the rule at page 11:

> The rule is that, where a definite statement of a matter of fact is made in the presence or hearing of a party, so that he understands it, in regard to facts affecting him or his rights, and the statement is of such a nature as to call for a reply, and the party addressed is possessed of knowledge concerning the matter referred to, and is not physically disabled from answering, the statement, in connection with a total or partial failure to reply, is admissible in evidence as tending to show a concession of the truth of the facts stated.

Plaintiff cannot satisfy the rule. He has not referred us to any point in the record which suggests that Schaletzke heard the statement. Further, the nature of the occasion did not call for a reply. Moreover, this ground for admitting the statement was not urged to the trial court. Its admissibility on this ground cannot be urged for the first time on appeal. *Cochran v. Harrison Memorial Hosp.*, 42 Wn.2d 264, 254 P.2d 752 (1953). 5 R. Meisenholder, Wash. Prac. § 321, at 294 (1965).

Error is assigned to the refusal of the court to admit testimony of statements attributed to Trenckmann. Plaintiff offered to prove that in early February of 1972 Trenckmann visited William Brown for purposes not connected with the accident. In the course of the conversation he allegedly said that "the people there knew that there was

an ice build–up and that they should have knocked it down that day before Makoviney got there."

The plaintiff also offered to prove a similar statement made by Trenckmann to Don Makoviney, plaintiff's brother, a few days after the accident.

Two theories were advanced to the trial court for the admission of the evidence. First, plaintiff argues that it was a substantive admission by an authorized agent made against the interest of his principal. The second ground urged is that it was admissible to impeach Trenckmann whose testimony had previously been taken by deposition. In the deposition, Trenckmann admitted that he knew there was snow on the roof but did not consider it a hazard to anyone walking out of the door in question. He denied ever hearing the boss or anyone mention that the ice should be knocked down. In the deposition, no questions were put to him concerning the statements to Brown and to Don Makoviney. No other grounds for admission were urged to the trial court.

The trial court found that Trenckmann was not an agent within the meaning of the rule which permits the statement of an agent to be admitted against the principal.[3]

The trial court's finding was correct. Clearly, William Schaletzke, rather than Trenckmann, was the managing agent on the day in question. Trenckmann was a salesman with a salesman's usual duties and authority. He had no express authority to speak regarding the accident although his employer had given him no express orders not to speak about the matter.

In *Kadiak Fisheries Co. v. Murphy Diesel Co.,* 70 Wn.2d 153, 422 P.2d 496 (1967), the court approved the rule of law as set forth in Restatement (Second) of Agency §§ 286, 288 (1958). Those rules are:

---

[3]Finding of fact No. 5 reads:
"William Trenckmann was an employee of defendants, but was not an agent of defendants for any purpose material to this litigation."

§ 286. STATEMENT TO THIRD PERSONS CONSTITUTING ADMISSIONS

In an action between the principal and a third person, statements of an agent to a third person are admissible in evidence against the principal to prove the truth of facts asserted in them as though made by the principal, if the agent was authorized to make the statement or was authorized to make, on the principal's behalf, any statements concerning the subject matter.

§ 288. WHEN AGENT HAS AUTHORITY TO MAKE STATEMENTS

(1) The general rules concerning the interpretation of authority are applicable in determining whether an agent has authority to make statements concerning operative or other facts.

(2) Authority to do an act or to conduct a transaction does not of itself include authority to make statements concerning the act or transaction.

(3) Authority to make statements of fact does not of itself include authority to make statements admitting liability because of such facts.

■ *Kadiak* does not control the fact situation before us because in that case the declarant was found to lack personal knowledge of the matter about which he purported to speak. The rule, however, is that authority to conduct a transaction, in the present case to sell equipment, does not by itself include authority to make statements concerning the act or transaction. Appellant asks us to go even farther and to imply authority to speak about the accident from the fact that Trenckmann had authority to make a sale. We believe that this is a misapplication of the rule. The proper application of the Restatement rule found in section 288 is well illustrated by example 2 on page 11 of volume 2 in which the driver of the car, acting within the scope of his employment, shouts, at the moment of impact, "I wasn't looking. It's my fault." The statement is not admissible as an admission though it may be under the res gestae

exception.[4]

Likewise, the fact that after the accident, Trenckmann was not put under any restrictions as to what he might say or to whom he might speak, does not make the statement admissible. It is only admissible if, in speaking, he is carrying out his employer's business pertaining to the matter about which he uttered the words. 2 Restatement (Second) of Agency § 288, comment *c*, at 11 (1958).

Plaintiff contends that Trenckmann's authority to speak arises from an implied agency and that plaintiff was therefore entitled to rely on his apparent authority. This is a tort situation. Plaintiff's injury occurred because of the fall of the material from the roof, not because of reliance by the plaintiff on words spoken by Trenckmann. Thus the presence or absence of implied or apparent authority for some other purpose is immaterial. *See* Restatement (Second) of Agency § 286, comment *b*, at 10 (1958). In support of his position, plaintiff cites *Busk v. Hoard,* 65 Wn.2d 126, 396 P.2d 171 (1964); *Turnbull v. Shelton,* 47 Wn.2d 70, 286 P.2d 676 (1955); *Mohr v. Sun Life Assurance Co. of Canada,* 198 Wash. 602, 89 P.2d 504 (1939), and *Hall v. Anton Indus., Inc.,* 10 Wn. App. 106, 516 P.2d 1070 (1973). These cases are not on point because they all concern situations in which the plaintiff was misled by the acts of the principal concerning the existence of an agency relationship.

The plaintiff next contends that if the statements were not admissible as substantive evidence, they were nevertheless admissible to impeach Trenckmann. Trenckmann was not available as a witness for trial. His testimony came in through a pretrial deposition. No foundation for the impeaching questions had been laid in that deposition although apparently, at the time of taking it, plaintiff was aware of the fact that the statements had been made because plaintiff's wife had made reference to them in her

---

[4]Parenthetically, we note that the date of the earliest asserted statement by Trenckmann was at least 2 days later, at another place and under circumstances of a normal business visit. Clearly, the evidence does not qualify under the res gestae criteria of *Beck v. Dye,* 200 Wash. 1, 92 P.2d 1113 (1939).

deposition which had been taken several months previously.

A witness whose testimony is presented by deposition cannot be impeached by evidence of contradictory statements unless a proper foundation has been laid by calling his attention to them. *Scandinavian American Bank v. Long,* 75 Wash. 270, 134 P. 913 (1913); *Brown v. Gillett,* 33 Wash. 264, 74 P. 386 (1903); 5 R. Meisenholder, Wash. Prac. § 296, at 258 (1965).

The potential hardship of this rule was recognized in *Brown v. Gillett, supra,* and plaintiff urges us to relax it. Even if we were to do so, the statements, because they are impeaching only, would add nothing to plaintiff's substantive evidence because they could not properly be used to establish knowledge of a known dangerous condition. *State v. Fliehman,* 35 Wn.2d 243, 212 P.2d 794 (1949).

A third theory of admissibility is urged in the brief, namely, that the Trenckmann statements were against his own pecuniary interest because they might jeopardize his employment or entail possible civil liability. This theory was not presented to the trial court and cannot be raised for the first time on appeal. *Cochran v. Harrison Memorial Hosp., supra.*

Error is assigned to the refusal of the court to allow William Brown to testify concerning weather conditions at his home in Mason County for the purpose of establishing weather conditions in Montesano. He testified that his home was 9 or 10 miles toward Montesano from Shelton, apparently on the road between Shelton and Matlock. His testimony, 5 years after the event, was based on memory, a mental log, as he expressed it. He did testify that he was attentive to weather conditions because his work depended on the weather. He said that he had time records which would have helped him establish the days upon which his operation was shut down because of snow but he had not consulted them. On cross–examination, he admitted he did not know how much snow fell in Montesano in the winter of 1971–72 and that his testimony on that would be limited

to speculation. As such, it was at best an opinion. No witness was offered who purported to testify from personal observation concerning the amount of snow and ice at Montesano during the critical days before January 28, 1972.

█ The admission or refusal of opinion evidence rests within the discretion of the trial court. *Weber v. Biddle,* 72 Wn.2d 22, 431 P.2d 705 (1967). Even where the reasons for admissibility of opinion evidence are fairly debatable, the trial court has very wide discretion and will not be reversed on appeal. *Hill v. C. & E. Constr. Co.,* 59 Wn.2d 743, 370 P.2d 255 (1962); *Levea v. G.A. Gray Corp.,* 17 Wn. App. 214, 562 P.2d 1276 (1977).

In the case before us, the point of observation of the witness was more than 15 miles inland. Fifteen miles in the other direction at Hoquiam, the weather reports show markedly different and more moderate conditions. The trial judge expressed familiarity with the area concerned. We cannot say that he abused his discretion by excluding the opinion evidence of snow and ice conditions on the roof of the building in Montesano deduced from conditions remembered at Dayton. *Alumbaugh v. Underwriting Members of Lloyd's, London,* 51 Wn.2d 331, 317 P.2d 1064 (1957).

For the same reason, we cannot say it was error to exclude Don Makoviney's evidence concerning weather conditions and snow and ice buildup on his shop roof. His building was even farther away, being near the Shelton airport on the northern edge of Shelton. Further, the roof of his building was entirely different, being essentially flat so that it would not shed snow as readily.

Error is assigned to the denial of plaintiff's motion for continuance.

█ Although a motion for continuance is addressed to the discretion of the trial court, it nevertheless must comply with the applicable rules. *Northern State Constr. Co. v. Banchero,* 63 Wn.2d 245, 386 P.2d 625 (1963). CR 40(e) provides in part:

**Continuances.** A motion to continue a trial on the ground of the absence of evidence, shall only be made upon affidavit, showing the materiality of the evidence expected to be obtained, and that due diligence has been used to procure it, and also the name and residence of the witness or witnesses. The court may also require the moving party to state upon affidavit the evidence which he expects to obtain; and if the adverse party admits that such evidence would be given, and that it be considered as actually given on the trial, or offered and overruled as improper, the trial shall not be continued. The court, upon its allowance of the motion, may impose terms or conditions upon the moving party.

Plaintiff made an oral offer of proof but did not supply the required affidavit. Technically, this is not sufficient.

Assuming for the sake of this decision, however, that this procedural deficiency was excusable, the trial court nevertheless acted within the proper limits of its discretion. The plaintiff had known for 3 weeks that he did not have the witness under subpoena, yet did not move for a continuance until the end of his case–in–chief after receiving unfavorable evidentiary rulings. In addition, as the trial court noted in denying the motion, the testimony sought would have been only impeaching. It would have added nothing to the substantive evidence necessary to aid plaintiff in proving that defendants knew or should have known of a dangerous condition and therefore had a duty to guard plaintiff against it.

■ Lastly, the plaintiff assigns error to the fact that the trial court did not find for him on the issue of negligence. The question of whether or not the defendants and their employees exercised reasonable care to protect plaintiff against the danger is a question of fact for the decision of the trial court. On the record before us, we cannot say that there existed a condition so obviously dangerous that liability existed as a matter of law. Whether a landowner has taken reasonable precautions to protect business invitees is a question of fact. *Rockefeller v. Standard Oil Co.,* 11 Wn.

App. 520, 523 P.2d 1207 (1974) and *Baltzelle v. Doces Sixth Ave., Inc.,* 5 Wn. App. 771, 490 P.2d 1331 (1971).

The judgment of dismissal is affirmed.

PEARSON, C.J., and RINGOLD, J., concur.

Reconsideration denied September 5, 1978.

Review denied by Supreme Court January 19, 1979.