[No. 3610–II. Division Two. January 15, 1982.]

TOPLINE EQUIPMENT, INC., *Appellant,* v. STAN WITTY LAND, INC., ET AL, *Respondents.*

*R. DeWitt Jones,* for appellant.

*D. Bruce Morgan,* for respondents.

REED, C.J.—This action arose out of an attempt by Topline Equipment, Inc. (Topline), an Oregon corporation, to recover the balances owed by Stan Witty Land, Inc. (Witty), a Washington corporation, on three conditional sales contracts. The central issue on appeal concerns the applicability to these three contracts of various interest and usury provisions in RCW 19.52. The trial court limited Topline's interest rate to 6 percent per annum pursuant to RCW 19.52.010, but refused to impose the usury penalties provided for in RCW 19.52.030. Topline also challenges a jury award of $40,000 for tortious contract interference. Finding no error, we affirm the trial court in all respects.

Over a 2–year period from 1974 to 1976, Witty entered into three separate conditional sales contracts with Topline for the purchase of logging equipment. These contracts were executed on forms supplied by CIT Finance Company (CIT), and provided Topline with an article 9 security interest in the equipment being sold. Immediately upon execution, each of the three contracts, along with the security interests, was assigned to CIT subject to recourse against Topline.

The contracts called for monthly installments. Both parties concede that these payments embodied a "time price differential,"[1] which was equivalent to an annual interest

---

[1] The term "time price differential" refers to a figure representing the differ-

charge of 12 percent or less. However, neither the specific rate of interest, nor sufficient information from which such rate could be computed, was set forth in any of the agreements.

In July 1977, Witty entered into a memorandum agreement with Northwest Auction of Portland (Northwest) with the intention of auctioning off a substantial portion of its logging equipment, including the three pieces covered by the contracts. Witty and Northwest then contacted CIT in order to work out an arrangement for payoff of the contracts. CIT responded by submitting an agreement, to be signed by Northwest and Witty, providing that CIT would not oppose the auction of the secured equipment if the contracts were brought current and full payment guaranteed.

At this point, Topline, through its attorney, sent a letter to Northwest indicating that it would not permit the auction of the logging equipment unless Witty made provisions to pay not only the amounts secured by contract, but certain unsecured claims totaling $15,000 as well. These claims were the subject of litigation then pending between the parties. There was also evidence that Mr. Gold, Topline's credit manager, told Witty that, if necessary, he would serve legal papers to stop the auction. Topline subsequently retreated from this hard line position and informed Witty that it would not insist on payment of the disputed unsecured claims prior to the auction. However, Witty and Northwest maintained that the auction had already been canceled by the time they received this information.

After the cancellation of the auction, Witty became further delinquent under the contracts. Consequently, the contracts were reassigned to Topline and this lawsuit was initiated. Uncontroverted testimony established that the balance owing on the contracts at the time of trial was

---

ence between the cash price of an item and the total cost of purchasing that item on credit. *See National Bank of Commerce v. Thomsen,* 80 Wn.2d 406, 495 P.2d 332 (1972).

$41,215.95. Witty asserted the defense of usury and counterclaimed for damages based on Topline's intentional interference with the auction agreement between itself and Northwest.

The trial court withdrew the issue of usury from the jury but refused to award Topline the entire amount owing on the contracts. Instead, because the contracts failed to specify the exact rate of interest being charged, the court reduced the interest rate to 6 percent pursuant to RCW 19.52.010. This resulted in a balance of principal and interest of $30,043.13.

Topline moved for a judgment notwithstanding the verdict on the issue of intentional business interference. The trial court denied this motion and proceeded to offset the contract balances found owing to Topline, along with the reasonable attorneys' fees and costs provided for in the contract, by the amount of the jury verdict in favor of Witty. The offset resulted in a net judgment for Witty of $8,328.87. The court further held that Topline's security interests in the three items of equipment were extinguished as a result of the offsetting judgments.

On appeal Topline first contends that the trial court's recomputation of the contract balances at the statutory rate of 6 percent pursuant to RCW 19.52.010, constituted an impermissible modification of the terms of the conditional sales contracts. At all times pertinent hereto, RCW 19.52-.010 provided that

> Every loan or forbearance of money, goods, or thing in action shall bear interest at the rate of six percent per annum where no different rate is agreed to in writing between the parties.[2]

Topline maintains that this statute was inapplicable in the instant case because the parties had written contracts

---

[2]RCW 19.52.010 has subsequently been amended to allow interest to be charged at a rate of 12 percent per annum in the absence of a written agreement specifying a different rate. *See* RCW 19.52.010 (1981 amendment).

which incorporated interest rates of 12 percent.[3]

■ Topline's argument is unfounded. RCW 19.52.010 clearly limits interest charges to 6 percent per annum in the absence of a written agreement specifying a different rate. We believe that in order to satisfy the writing requirement embodied in the statute, the parties must have a written agreement which expressly states an interest rate or, at the very least, contains sufficient terms so that the determination of the rate is merely a matter of calculation. *Cf. Community Sav. & Loan Ass'n v. Fisher,* 409 S.W.2d 546 (Tex. 1966); *see also Hazard v. Maxon,* 1 Wash. Terr. 584 (1878) (under the original statute governing interest rates only the legal rate of interest could be recovered on a contract which was so ambiguous as to render it uncertain whether more than such rate was stipulated for). Here, it is undisputed that the specific rate of interest being charged was not disclosed in any of the conditional sales contracts. Moreover, none of the contracts provided sufficient information, (*i.e.,* the original cash price of the items or the aggregate finance charges) from which the rate of interest could be computed. To make the situation even more misleading, the rate of interest prior to maturity is actually stated on all three

---

[3]Topline has abandoned its unsuccessful trial argument that conditional sales contracts do not involve a loan or forbearance and are therefore immune to the interest and usury statutes set forth in RCW 19.52. It is true that older Washington cases adhered to the view that a conditional or credit sale did not constitute a loan. *See Hafer v. Spaeth,* 22 Wn.2d 378, 156 P.2d 408 (1945). However, at the time the present contracts were entered into, the Washington courts had adopted the position that the assignment of a conditional sales contract to a finance company which enjoyed a close relationship with the seller indicated that the credit sale was actually a loan and required the application of the interest and usury statutes. *National Bank of Commerce v. Thomsen,* 80 Wn.2d 406, 495 P.2d 332 (1972). Here, Topline and CIT had an ongoing arrangement whereby CIT purchased Topline's installment paper. Moreover, the contracts were actually written on printed forms supplied by CIT. Under these circumstances, there is no question of the general applicability of RCW 19.52.

In 1981 the legislature enacted RCW 19.52.120 which specifically prohibits the application of the provisions of RCW 19.52 to any conditional sales contract. However, this enactment does not aid Topline. A newly enacted statute which is substantive in nature and affects vested contractual rights is not given retroactive effect. *Kittilson v. Ford,* 23 Wn. App. 402, 595 P.2d 944 (1979).

contracts at "0" percent per annum. Against this evidentiary background, the trial court's recomputation of the contracts pursuant to RCW 19.52.010 was appropriate.

██ Topline next contends there was insufficient evidence to support Witty's claim of tortious business interference and that consequently the trial court erred in refusing to grant its motion for judgment n.o.v. The basic elements which must be established to support a wrongful interference claim are: (1) the existence of a valid contractual relationship or business expectancy; (2) knowledge of the relationship or expectancy on the part of the interferor; (3) intentional interference inducing or causing a breach or termination of the relationship or expectancy; and (4) resulting damage to the party whose relationship or expectancy was disrupted. *Calbom v. Knudtzon,* 65 Wn.2d 157, 396 P.2d 148 (1964); *Singer Credit Corp. v. Mercer Island Masonry, Inc.,* 13 Wn. App. 877, 538 P.2d 544 (1975). Topline challenges the sufficiency of the evidence with respect to the first three of these elements. It is well established that on an appeal of this type the evidence, and all reasonable inferences therefrom, must be considered in the light most favorable to the prevailing party. *Bland v. Mentor,* 63 Wn.2d 150, 385 P.2d 727 (1963); *Singer Credit Corp. v. Mercer Island Masonry, Inc., supra.*

Topline's allegations that there was insufficient evidence to establish the existence of a business relationship between Witty and Northwest which could provide a basis for the tortious interference claim is without merit. The record indicates that both parties had signed a memorandum agreement to hold the auction and that Northwest had inspected and appraised the items to be sold. Additionally, the major items had been advertised and arrangements made with CIT to pay off the secured debts. This evidence clearly warranted the jury's conclusion that there was a valid business relationship between the parties.

██ Topline's argument that the evidence failed to establish that it had the requisite knowledge of the auction agreement to support a claim of tortious interference is also

unfounded. It is not necessary that the interferor understand the precise legal nature of the relationship with which he is interfering.

> Although knowledge of the existence of the business relationship in issue is an essential element in establishing liability for interference therewith, it is sufficient if the evidence reveals that the alleged interferor had knowledge of facts giving rise to the existence of the relationship. It is not necessary that the interferor understand the legal significance of such facts.

*Calbom*, 65 Wn.2d at 165. Here, the record reveals that Topline communicated with both Witty and Northwest on several occasions and was aware of some kind of business arrangement regarding the auction of the logging equipment.

We also find unpersuasive Topline's contention that there was insufficient evidence to establish that the claimed interference on its part actually induced the cancellation of the auction. Topline presented evidence that it had retracted its demands regarding payoff on the unsecured claims prior to Northwest's decision to cancel. However, Northwest denied this and testified that the cancellation was directly motivated by Topline's threats of legal intervention. When viewed in the light most favorable to Witty, this evidence supports the jury's finding that Topline's interference was responsible for the termination of the auction agreement.

Topline additionally contends that any interference on its part was privileged, as a matter of law, because it had a legally protected interest in assuring that its unsecured claims would be satisfied before Witty sold all of its assets. We disagree. Interference is justified *as a matter of law* only when the interferor engages in the exercise of an absolute right, equal or superior to the right which is invaded. *Brown v. Safeway Stores, Inc.*, 94 Wn.2d 359, 617 P.2d 704 (1980); *O'Brien v. Western Union Tel. Co.*, 62 Wash. 598, 114 P. 441 (1911); *Singer Credit Corp. v. Mercer Island Masonry, Inc., supra; see also* 45 Am. Jur. 2d *Interference*

§ 28, at 305 (1969). An absolute right exists only where a person has a definite legal right to act, without any qualification. *See O'Brien v. Western Union Tel. Co., supra; Ulan v. Lucas,* 18 Ariz. App. 129, 500 P.2d 914 (1972). Even the existence of a secured debt does not necessarily provide a creditor with an *absolute right* to interfere with a contractual relationship that might compromise that debt. *Meason v. Ralston Purina Co.,* 56 Ariz. 291, 107 P.2d 224 (1940); *Mitchell v. Aldrich,* 122 Vt. 19, 163 A.2d 833 (1960). Here, Topline's claim of privilege was based on its alleged right to protect unsecured and disputed debts that were even then being litigated. Moreover, Topline eventually recognized the tenuous nature of this claim and withdrew its demand that these disputed debts be paid prior to the auction. Under these facts Topline's interference was not justified as a matter of law and the issue was properly presented to the jury.

The remaining question is whether there was sufficient evidence to support the jury's factual determination that Topline's conduct was not privileged. An examination of the surrounding circumstances, including the disputed nature of the debts upon which the claim of privilege was based and Topline's eventual change in position regarding payment, convinces us that there was substantial evidence in this regard.

■ Topline further challenges the sufficiency of the evidence with respect to the $40,000 damage award. This argument is also unfounded. A party need not prove damages with mathematical certainty where the fact of damage is well established. *Edwards Contracting Co. v. Port of Tacoma,* 83 Wn.2d 7, 514 P.2d 1381 (1973). Evidence of damage is sufficient if it affords a reasonable basis for estimating the loss and does not subject the trier of fact to mere speculation or conjecture. *Haner v. Quincy Farm Chems., Inc.,* 29 Wn. App. 93, 627 P.2d 571 (1981). Although there was no written appraisal in the present case, both Witty and Northwest provided undisputed testimony—some of it expert—regarding the items that would

have been auctioned and the approximate profit that would have been realized. Both parties placed this well in excess of $40,000. There was also evidence that Witty suffered additional damages due to cancellation charges on the auction, further depreciation on the equipment, and losses on assets disposed of under distress. Accordingly, we find that there was substantial evidence to support the $40,000 jury verdict.

■ Topline next questions the propriety of the trial court's decision to offset the indebtedness of each party against the other. Topline contends that a judgment upon an express contract cannot be offset by a counterclaim sounding in tort. This contention is patently without merit. CR 13 expressly provides that a counterclaim may seek relief different in kind from that sought by the opposing party. Once it is determined that the counterclaim was properly joined in the action, there is no question as to the propriety of the offset. For almost a century the Washington courts have recognized that a counterclaim embodies the right of a defendant to have the claims of the parties counterbalanced in whole or in part, and to have judgment entered for any excess. *Sheafe v. Hastie,* 16 Wash. 563, 48 P. 246 (1897); *see also* CR 13(c); 20 Am. Jur. 2d *Counterclaim, Recoupment, and Setoff* § 8, at 233 (1965). Topline additionally argues that offset was precluded by the secured nature of its claim. We disagree. The limited authority which exists on this issue indicates that an unsecured claim may be asserted as a counterclaim against a secured claim. *First Nat'l Bank v. Parker,* 28 Wash. 234, 68 P. 756 (1902); 80 C.J.S. *Set–off and Counterclaim* § 45, at 73 (1953).

■ The final assignment of error asserted by Topline concerns the unduly prejudicial nature of one of the exhibits admitted at trial. This particular objection to the exhibit was not raised at trial and therefore is not entitled to review. *Makoviney v. Svinth,* 21 Wn. App. 16, 584 P.2d 948 (1978).

On cross appeal Witty contends that it was entitled to additional relief pursuant to usury penalties embodied in

RCW 19.52.030. This statute provides for sanctions against a party who contracts for or receives a greater rate of interest "than is allowed by statute."[4] Witty argues that the penalties were appropriate in the instant case because the interest being charged by Topline was greater than the 6 percent per annum allowed by RCW 19.52.010 in the absence of a written agreement specifying a higher rate. This argument was rejected by the trial court which held that the penalty provisions in RCW 19.52.030 applied only where the rate of interest charged was greater than the 12 percent maximum set forth in RCW 19.52.020.[5]

 Our disposition of this matter is controlled by the following proviso to RCW 19.52.030:

[T]he debtor may not commence an action on the contract to apply the provisions of this section if a loan or forbearance is made to a corporation engaged in a trade or business for the purposes of carrying on said trade or business unless there is also, in connection with such loan or forbearance, the creation of liability on the part of a natural person or his property *for an amount in excess of the principal plus interest allowed pursuant to RCW 19.52.020.*

(Italics ours.) Here, the extension of credit embodied in the

---

[4]At all times pertinent hereto, RCW 19.52.030 provided in relevant part:

"(1) If a greater rate of interest than is allowed by statute shall be contracted for or received or reserved, the contract shall be usurious, but shall not, therefore, be void. If in any action on such contract proof be made that greater rate of interest has been directly or indirectly contracted for or taken or reserved, the creditor shall only be entitled to the principal, less the amount of interest accruing thereon at the rate contracted for; and if interest shall have been paid, the creditor shall only be entitled to the principal less twice the amount of the interest paid, and less the amount of all accrued and unpaid interest; and the debtor shall be entitled to costs and reasonable attorneys' fees plus the amount by which the amount he has paid under the contract exceeds the amount to which the creditor is entitled: . . ."

[5]At all times relevant hereto, RCW 19.52.020 provided in pertinent part:

"Any rate of interest not exceeding twelve percent per annum agreed to in writing by the parties to the contract shall be legal, and no person shall directly or indirectly take or receive in money, goods, or things in action, or in any other way, any greater interest, sum or value for the loan or forbearance of any money, goods or things in action than twelve percent per annum: . . ."

contracts constituted a loan to a corporation (*i.e.,* Witty) for the purpose of carrying on its trade or business. *See National Bank of Commerce v. Thomsen,* 80 Wn.2d 406, 495 P.2d 332 (1972); see also footnote 3, *supra.* Witty's obligations under these contracts were personally guaranteed by Stanley Witty and his marital community. However, it is undisputed that the interest rates incorporated in these contracts did not exceed the 12 percent maximum permitted under RCW 19.52.020. Therefore, pursuant to the foregoing proviso, Witty is precluded from seeking application of the usury penalties contained in RCW 19.52.030.

 Witty's other assignment of error concerning the trial court's award of attorneys' fees to Topline is unaccompanied by citation of authority and does not appear on its face to be meritorious. It is therefore not deserving of review. *State v. Young,* 89 Wn.2d 613, 574 P.2d 1171 (1978); *Ban–Co Inv. Co. v. Loveless,* 22 Wn. App. 122, 587 P.2d 567 (1978).

The final matter for our determination involves Topline's request for attorneys' fees on appeal. This request must be denied because of noncompliance with RAP 18.1(c). *Sollenberger v. Cranwell,* 26 Wn. App. 783, 614 P.2d 234 (1980).

For the reasons stated, we affirm.

PEARSON and PETRIE, JJ., concur.

Reconsideration denied February 23, 1982.

Review denied by Supreme Court May 7, 1982.