[No. 10592–2–I.   Division One.   August 10, 1983.]

QUADRA ENTERPRISES, INC., *Appellant,* v. R. A. HANSON COMPANY, INC., *Respondent.*

*H. Lee Olwell,* for appellant.

*Winston & Cashatt* and *L. H. Vance, Jr.,* for respondent.

ANDERSEN, C.J.—

## FACTS OF CASE

The plaintiff, Quadra Enterprises, Inc., appeals from a judgment in this tortious interference with a business relationship case tried to the court.

In 1976, Samuel J. Emmanuel, owner of real property on Cypress Island in the San Juans, entered into a logging contract with Quadra Enterprises, Inc. Pursuant to that contract, Quadra was to log only those areas to be "marked or designated" by the owner's representative. The contract also provided Quadra a minimum amount of timber.

From the inception of the Emmanuel–Quadra logging agreement, it was known to both Quadra and its logging subcontractor that the owner, Emmanuel, was in the process of selling his Cypress Island property and that the portion known as the "Lois Lake" area was to be specially handled. Specifically, the record reflects that Lois Lake was either a prohibited logging area or an area to be specially logged as a last resort only. During the course of logging operations, the owner's representative never marked or designated Lois Lake as a general logging area and, according to his testimony at trial, he informed both Quadra's field representative and Quadra's subcontractor that the Lois Lake area was not to be logged.

In 1978, while the logging operation continued, Emmanuel sold the Cypress Island property to Hanson Enterprises, Inc. (Hanson). The real estate contract by which the property was sold provided, in part, that the sale was "subject to the completion of the logging contract between Quadra

Enterprises, Incorporated, and Samuel J. Emmanuel". Quadra was duly informed of the sale. Subsequently, Hanson appointed an "on site" representative to manage the Cypress Island property.

Upon inquiry of Hanson's representative, Quadra's subcontractor stated that Quadra planned to immediately move its logging operation into the Lois Lake area. This intent was communicated to Hanson. At Hanson's direction, Hanson's on–site representative issued a 1–sentence notice to the subcontractor to stop logging. When the subcontractor ignored the notice, Hanson, through legal counsel, delivered a written second notice to Quadra's subcontractor directing him to stop all of Quadra's logging operations "until all the parties' rights and obligations" under the logging agreement could be resolved. The notice further stated that any further logging would be viewed as a criminal trespass. Although Quadra apparently directed its subcontractor to continue, the subcontractor ceased all logging operations.

Subsequently Quadra filed suit against Hanson alleging tortious interference with its logging contract rights. A trial to the court followed and findings of fact, conclusions of law and a judgment for Hanson were entered. The trial court concluded that the logging agreement between Emmanuel and Quadra had not been assigned to Hanson by the Emmanuel–Hanson real estate contract. The trial court also, however, found that Hanson acted in good faith on a reasonable and bona fide belief that the logging agreement was not being complied with, and in a conclusion of law (that was a mixed finding of fact and conclusion of law)[1] held that Hanson was justified (privileged) in acting as it did to protect its proprietary interest in the Cypress Island property.

Quadra's appeal from Hanson's judgment presents one ultimate issue.

---

[1]*See* 45 Am. Jur. 2d *Interference* § 27, at 305 (1969).

## ISSUE

In this tortious interference with a business relationship case, did the trial court err when it found and concluded that the defendant Hanson's actions were justified (privileged)?

## DECISION

CONCLUSION. The trial court did not err in finding and concluding that the defendant Hanson's actions were justified (privileged) because substantial evidence was presented at the trial to show that Hanson had in good faith asserted a legally protected interest of its own which it reasonably believed would be impaired by the plaintiff Quadra's proposed logging of the Lois Lake area which Quadra's logging subcontractor was moving into at the time of the action in question.

Quadra argues that the facts of this case did not warrant the trial court finding and concluding that Hanson's actions were justified (privileged) and not improper.

■ Where, as here, the trial court hears all of the evidence and enters findings of fact and conclusions of law, the scope of appellate review is limited to determining whether the findings are supported by substantial evidence, and if so, whether the findings support the trial court's conclusions of law and judgment. *Holland v. Boeing Co.*, 90 Wn.2d 384, 390–91, 583 P.2d 621 (1978). "Substantial evidence is evidence of sufficient quantum to persuade a fair-minded person of the truth of the declared premise." *Brown v. Safeway Stores, Inc.*, 94 Wn.2d 359, 373, 617 P.2d 704 (1980). Any conclusion of law erroneously designated as a finding of fact is nonetheless subject to review. *Local 1296, Int'l Ass'n of Firefighters v. Kennewick*, 86 Wn.2d 156, 161–62, 542 P.2d 1252 (1975).

■ Interference with contractual relations is an intentional tort. In all of its forms, the interference must be both *intentional* and *improper*. As to the latter, it is the established law of this state that "'[o]ne who in good faith asserts a legally protected interest of his own which he

believes may be impaired by the performance of a proposed transaction is not guilty of tortious interference.'" *Brown,* at 375 (quoting *Singer Credit Corp. v. Mercer Island Masonry, Inc.,* 13 Wn. App. 877, 884, 538 P.2d 544 (1975)).

Guidance in this area of the law is provided by the Restatement (Second) of Torts. It instructs:

> Asserting Bona Fide Claim
> One who, by asserting in good faith a legally protected interest of his own or threatening in good faith to protect the interest by appropriate means, intentionally causes a third person not to perform an existing contract or enter into a prospective contractual relation with another does not interfere improperly with the other's relation if the actor believes that his interest may otherwise be impaired or destroyed by the performance of the contract or transaction.

Restatement (Second) of Torts § 773, at 52 (1979). *See Scymanski v. Dufault,* 80 Wn.2d 77, 87, 491 P.2d 1050 (1971); *Singer,* at 884. The comment to section 773 goes on to explain:

> The rule stated in this Section gives to the actor a defense for his legally protected interest. It is of narrow scope and protects the actor only when (1) he has a legally protected interest, and (2) in good faith asserts or threatens to protect it, and (3) the threat is to protect it by appropriate means.

Restatement (Second) of Torts § 773, comment *a,* at 52 (1979). *See Brown,* at 375–76; *Singer.*

In cases of this sort, "as with negligence, when there is room for different views, the determination of whether the interference was improper or not is ordinarily left to the [trier of fact]". Restatement (Second) of Torts § 767, comment *l,* at 38–39 (1979). *See Topline Equip., Inc. v. Stan Witty Land, Inc.,* 31 Wn. App. 86, 93–94, 639 P.2d 825 (1982). *See also Calbom v. Knudtzon,* 65 Wn.2d 157, 163–66, 396 P.2d 148 (1964).

Our review of the appellate record in this case does reflect substantial evidence in support of the court's mixed finding and conclusion that Hanson's actions under the cir-

cumstances were justified and not improper.

Specifically, although Hanson had no legal right in Quadra's logging contract as such,[2] any logging on the Cypress Island property outside the terms of that logging contract would necessarily be subject to Hanson's proprietary control as purchaser of the island property which granted Hanson an estate in fee. *See Hedin v. Roberts,* 16 Wn. App. 740, 741–42, 559 P.2d 1001 (1977). Hanson thus had an interest which it could legally protect in the event logging occurred on the Cypress Island property in contravention of Quadra's contract with Emmanuel.

The record also demonstrates that substantial evidence was presented to show the following: Quadra was only to log those areas marked or designated by Emmanuel's representative; all parties knew that Lois Lake was either not to be logged at all or was to be specially logged as a last resort; Lois Lake was not marked or designated as a general logging area according to the testimony of Emmanuel's representative and both Hanson's and Quadra's representative were aware of this; Quadra's logging subcontractor had plainly stated his intention, pursuant to Quadra's directive, to immediately log the entire Lois Lake area; and the logging subcontractor's intent in that regard had been communicated to Hanson. Based on this, the trial court was entitled to find, as it did, that Hanson had a good faith belief that its legally protected interest in the Cypress Island property was about to be impaired by the proposed logging of Lois Lake and that Hanson reasonably believed that to be in violation of Quadra's contract. Consequently, the trial court did not err in concluding that Hanson's actions in sending the notices to stop logging were not tortious. *See Singer,* at 883–84.

Finally, Quadra contends that the second notice to stop logging was not appropriate because it threatened criminal

---

[2] The trial court held that Quadra's logging contract was not assigned to Hanson by the real estate contract. The parties do not disagree with that determination.

prosecution for trespass. The record shows, however, that Quadra's subcontractor ignored Hanson's first notice and stated that Hanson "would have to bring the sheriff" to stop the logging operation. Further, as above discussed, Hanson had a reasonable and good faith belief that any logging at Lois Lake would be outside the terms of Quadra's contract with Emmanuel and in contravention of Hanson's property rights. A threat to exercise a legal right made in good faith is neither duress nor coercion in law and was not, as the trial court found, inappropriate under the circumstances of this case. *Pleuss v. Seattle,* 8 Wn. App. 133, 137–38, 504 P.2d 1191 (1972); *Doernbecher v. Mutual Life Ins. Co.,* 16 Wn.2d 64, 73–74, 132 P.2d 751 (1943).[3]

Affirmed.

WILLIAMS and RINGOLD, JJ., concur.

---

[3]The Restatement is in accord with this view. As it notes,

Causing or threatening to cause, *in bad faith,* the institution of criminal prosecution is ordinarily a wrongful method of interference . . .

(Italics ours.) Restatement (Second) of Torts § 767, comment *c,* at 31 (1979).

Here, there was an express finding of good faith.