[No. 6870-2-II.   Division Two.   January 2, 1986.]

GILBERT O. DAUPHIN, *Respondent,* v. MARK FREDERICK SMITH, ET AL, *Defendants,* JOSEPH DEPIETRO, ET AL, *Appellants.*

492

*Brian T. Comfort* and *Billett, Comfort & Rosenow,* for appellants.

*Kathleen B. Ebert* and *Bonneville, Viert, Morton & McGoldrick,* for respondent.

REED, A.C.J.—DPPMB Associates appeals an award of attorney's fees levied against it in favor of the plaintiff, Gilbert Dauphin, on a theory of equitable indemnity. The trial court was persuaded that DPPMB had acted wrongfully in refusing Dauphin's demands and had thereby forced him to initiate his suit. We conclude that DPPMB did not act wrongfully and was acting reasonably to protect its interests. We therefore reverse the award of attorney's fees to Dauphin.

Dauphin sold a commercial building to Mark and Lynda Smith and their corporation, Woodmark, Inc., on a real estate installment sales contract. The Smiths agreed to insure the property. If the building was destroyed, the Smiths would either use the money to reconstruct the building or pay off the balance then owed to Dauphin. The Smiths then resold the property on contract to DPPMB Associates. DPPMB agreed to insure the property to full value and in the event of a loss, to rebuild or pay off the contract balance with any insurance proceeds. The contract included the usual attorney fee provisions.

DPPMB immediately leased back the building to the Smiths. The Smiths, now lessees, agreed again to insure the property, this time for DPPMB's benefit. The Smiths insured the building for $218,000.

The building was destroyed by fire, and the insurer issued and delivered to Smith a check for $218,000, payable jointly to the Smiths, Woodmark, DPPMB and the Old National Bank (ONB).[1] DPPMB, claiming that Smith had

---

[1] The Smiths also pledged the Smith/DPPMB installment contract to Old

breached its agreement in several respects, including failing to insure the property to its full value, asserted that the proceeds should be used by the Smiths to rebuild. Dauphin, however, sought full payment from the Smiths on his sales contract, which then had an outstanding balance of about $167,000. Dauphin insisted that all of the payees endorse the check to him. From the $218,000 proceeds, he would retain the $167,000 due to him. It is not clear what was to become of the remainder.

DPPMB offered to endorse the check if Dauphin and all the payees would agree to place the proceeds in escrow until all of the various claims had been resolved. Dauphin, however, refused to cooperate, and sued the Smiths, Woodmark, ONB and DPPMB for a declaration that he was entitled to the balance owed on the Dauphin/Smith contract, for an order that all the defendants endorse the check for payment to him, and for an order that he should, after drawing his $167,000, deposit the residue with the clerk of court for later disposition.

Dauphin moved for summary judgment and the Smiths immediately tendered the check to the court, asserting that they were prepared to pay off the Dauphin/Smith contract if the other joint payees would endorse the check. On December 23, 1982, the court granted summary judgment to Dauphin, ordering all payees on the check to endorse it. However, the court ordered the payees to negotiate the check to the clerk of court and the clerk then to pay Dauphin his judgment for $167,000. The balance remaining was to be held by the court pending the resolution of the competing claims of the Smiths, ONB and DPPMB. The court awarded $1,500 in attorney's fees to Dauphin against DPPMB.

DPPMB sought reconsideration, limited to the question of attorney's fees. The court denied reconsideration, finding

National Bank as security for a loan. This later led to ONB's status as a joint payee and as a defendant in Dauphin's suit. However, ONB is not a party to this appeal.

that Dauphin had demanded DPPMB's endorsement of the check and that DPPMB had refused it. It found that this refusal was an act wrongful toward Dauphin, that the refusal had involved Dauphin in litigation with third parties, the Smiths, and that the Smiths were in no way connected with DPPMB's wrongful act.[2]

The rule in Washington is that "In absence of contract, statute, or recognized ground of equity, a court has no power to award an attorney's fee as part of the costs of litigation." *State ex rel. Macri v. Bremerton,* 8 Wn.2d 93, 113–14, 111 P.2d 612 (1941). Here, there were two separate contracts of sale: Dauphin to Smith and Smith to DPPMB. Thus, there was no privity of contract between Dauphin and DPPMB that would permit Dauphin to enforce against DPPMB the attorney's fees provision of his contract. No statute provides for attorney's fees in these circumstances. We must, therefore, look to some recognized ground of equity for such an allowance.

When the natural and proximate consequences of a wrongful act of A involve B in litigation with others, B may as a general rule recover damages from A for reasonable expenses incurred in that litigation, including attorney's fees.

> Three elements are necessary to create liability: (1) a wrongful act or omission by A toward B; (2) such act or omission exposes or involves B in litigation with C; and (3) C was not connected with the initial transaction or event, *viz.,* the wrongful act or omission of A toward B.

*Manning v. Loidhamer,* 13 Wn. App. 766, 769, 538 P.2d 136, *review denied,* 86 Wn.2d 1001 (1975). *See also North Pac. Plywood, Inc. v. Access Road Builders, Inc.,* 29 Wn. App. 228, 236, 628 P.2d 482, *review denied,* 96 Wn.2d 1002

---

[2]Although DPPMB disputes the finding that demand for endorsement was actually made upon it, it concedes that, in defense of its own interests, it would have refused to endorse if demand had been made. We therefore accept this finding of the trial court and look to the court's legal conclusions that DPPMB's conduct was wrongful and that it justified an award of attorney's fees to Dauphin against DPPMB.

(1981).

Dauphin asserts that DPPMB wrongfully interfered in his contractual relationship with the Smiths by making it impossible for them to pay off the balance owed on their contract with him. A prima facie case for this tort is made out by proof of: (1) the existence of a valid contractual relationship; (2) knowledge of the relationship on the part of the interferor; (3) intentional interference inducing or causing a breach of the relationship; and (4) resultant damage to the party whose relationship has been disrupted. *Calbom v. Knudtzon,* 65 Wn.2d 157, 162–63, 396 P.2d 148 (1964); *accord,* Restatement (Second) of Torts § 766 (1979).

Even if a prima facie case is made out, one who in good faith asserts a legally protected interest of his own that he believes may be impaired by the performance of a contract between others is not guilty of tortious interference. *Quadra Enters. v. R.A. Hanson Co.,* 35 Wn. App. 523, 527–28, 667 P.2d 1120 (1983); *Singer Credit Corp. v. Mercer Island Masonry, Inc.,* 13 Wn. App. 877, 884, 538 P.2d 544 (1975); *accord,* Restatement (Second) of Torts § 773 (1979). Further, we agree with the Supreme Court of California that:

> if two parties have separate contracts with a third, each may resort to any legitimate means at his disposal to secure performance of his contract even though the necessary result will be to cause a breach of the other contract.

*Imperial Ice Co. v. Rossier,* 18 Cal. 2d 33, 37, 112 P.2d 631, 633 (1941).[3]

We think that DPPMB's refusal to endorse the check

---

[3] In oral argument we were referred to language of this court that suggests that the party accused of interference may invoke the privilege arising from the assertion of a legally protected right only if this right is absolute and "equal or superior to the right which is invaded." *Topline Equip., Inc. v. Stan Witty Land, Inc.,* 31 Wn. App. 86, 93, 639 P.2d 825, *review denied,* 97 Wn.2d 1015 (1982). However, this high standard must be met only when the privilege is asserted to exist as a matter of law, rather than as a question of disputed fact. *See Topline Equip., Inc.* 31 Wn. App. at 90, 93 (motion for judgment notwithstanding the verdict).

was far from wrongful. The Smiths had obligations under contracts with both Dauphin and DPPMB, and DPPMB was therefore entitled to try to obtain the performance that it, correctly or incorrectly, believed was due under its contract. The law provided means for any of these parties to test this claim against Dauphin's. It is true that the Smiths, as stakeholders *with an interest* in the common fund themselves, could not have interpleaded the other claimants, in the strict sense of statutory interpleader. RCW 4.08.160; *State Bank v. Wilbur Mission Church,* 44 Wn.2d 80, 89, 265 P.2d 821 (1954); *Stusser v. Mutual Union Ins. Co.,* 127 Wash. 449, 457, 221 P. 331 (1923). However, even the Smiths could have filed a bill in the nature of an interpleader to reach the same result. *See Fuglede v. Wenatchee Dist. Coop. Ass'n,* 134 Wash. 350, 357, 235 P. 790, 39 A.L.R. 953 (1925); *Title Guar. & Sur. Co. v. Guernsey,* 205 F. 94, 95 (W.D. Wash. 1913); 45 Am. Jur. 2d *Interpleader* § 19 (1969). Either Dauphin or DPPMB, even though neither was in possession of the disputed fund, similarly could have filed a bill in the nature of a bill of interpleader and have sought a determination by the court of all claims to the disputed fund. *Texas v. Florida,* 306 U.S. 398, 406–07, 83 L. Ed. 817, 59 S. Ct. 563, 121 A.L.R. 1179 (1939); Annot., *Right of One Not a Mere Stakeholder To Bring Bill of Interpleader or Bill in Nature of Interpleader,* 83 L. Ed. 840, 850–55 (1939). The practical effect of DPPMB's refusal merely was to deprive Dauphin of the entire fund, to only part of which he was entitled. Dauphin fails here, as he did at trial, to show why the entire fund should have been placed in his hands at all, let alone without recourse to the judgment of a court sitting in equity upon these claims.

This conclusion is paralleled in the law of construction contract obligations. Checks from obligated property owners are usually payable jointly to contractors, subcontractors, and materials suppliers, because the owner often will not know the precise obligations of the other parties toward each other. However, he will know the total due from him. Further, he will want to ensure that all parties are paid, in

order to protect his property from labor or materialmen's liens. He therefore may leave the allocation of his joint check to the joint payees and the law protects him from further demand. After payment, a supplier has the right to refuse to endorse the joint check as against the demand of another joint payee until he is assured by escrow or other arrangement that he will be paid. *Post Bros. Constr. Co. v. Yoder,* 20 Cal. 3d 1, 6, 569 P.2d 133, 135, 141 Cal. Rptr. 28, 30 (1977).

Here, Dauphin refused to cooperate in an escrow, and throughout litigation continued to assert a right to hold the entire fund in his hands in order to ensure performance of the Dauphin/Smith contract. The trial court recognized no such right. Instead, it ordered payment of the entire fund to the clerk of court, followed by disbursement to Dauphin of his share. This order in itself demonstrates that DPPMB had denied Dauphin nothing that was his by a right to which DPPMB should have submitted. Indeed, although the court found DPPMB's claim inferior to Dauphin's, it granted Dauphin only that which he would have obtained by participating in an escrow and then seeking equitable allocation of the fund to the claims made upon it. DPPMB's refusal to endorse was therefore not wrongful.

We find persuasive support in the law of a sister state for rejecting Dauphin's claim to equitable indemnity of his legal expenses in suing DPPMB. The Court of Appeals of Idaho considered whether even an erroneous refusal to endorse a joint check is so unreasonable as to be sanctioned by an award of attorney's fees. There a landowner disputed the right of a crop purchaser to pay by a joint check for crops grown by the owner's farm lessee. The appellate court held that the landowner wrongfully had refused to endorse the joint checks. However, it held that this refusal was not an unreasonable defense of his own interests, even though his position was eventually found to be untenable. It therefore reversed an award of attorney's fees against him. *Wing v. Amalgamated Sugar Co.,* 106 Idaho 905, 684 P.2d 307, 313 (Ct. App. 1984). In the present case, unlike *Wing,* the

trial court erred in concluding that DPPMB's refusal to endorse the joint check was wrongful. A fortiori, DPPMB's assertion of its position was reasonable and an award of attorney's fees was not justified.

We have found that DPPMB was both privileged to refuse, and reasonably refused, to cooperate with Dauphin's pretrial demand. Therefore, we find that its conduct was not wrongful and that the first element essential to Dauphin's claim of entitlement to equitable indemnity of his attorney's fees from DPPMB has not been satisfied. We reverse the award of attorney's fees to Dauphin on this basis and do not reach other questions argued by the parties.

PETRICH and ALEXANDER, JJ., concur.