[No. 24364-8-III.   Division Three.   March 23, 2006.]

AAA CABINETS & MILLWORK, INC., ET AL., *Respondents*, v. ACCREDITED SURETY & CASUALTY COMPANY, INC., *Appellant*.

204

*William D. Hyslop* and *Erika Balazs* (of *Lukins & Annis, P.S.*), for appellant.

*Ryan D. Yahne* (of *Dunn & Black, P.S.*), for respondents.

*Jerret E. Sale* and *Jeff H. Yusen*, amici curiae.

¶1 SCHULTHEIS, J. — General contractor Lydig Construction, Inc., made payments by joint-payee checks to a subcontractor and two lower-tier subcontractors and received an assignment of the lower-tier subcontractors' rights against the subcontractor. In the name of the assignors, Lydig then demanded payment from Accredited Surety & Casualty Co., Inc., which had issued the subcontractor's license bond. Accredited refused payment, arguing that Lydig was not a valid beneficiary of the bond. On summary judgment, the trial court awarded Lydig one-half of the license bond as well as sizable attorney fees and costs.

¶2 Accredited challenges the judgment on appeal, contending Lydig has no valid claim against the bond and is not entitled to attorney fees and costs in excess of the amount of the bond. We conclude that issues of fact regarding the subcontractor's liability to the lower-tier subcontractors defeat summary judgment. Accordingly, we reverse.

## FACTS

¶3 Lydig was hired as general contractor on the Wilmer Davis Dining Hall Renovation Project at Washington State University. In July 2003, Lydig entered into a subcontract with Spokane Woodworking to build and install cabinets and other fixtures. Woodworking in turn hired the lower-tier subcontractors AAA Cabinets & Millwork, Inc., and Koch Sheet Metal, Inc. Pursuant to RCW 18.27.040, Woodworking posted a registration bond for $12,000, issued by Accredited.

¶4 Throughout the project, Lydig issued joint checks payable to Woodworking and Woodworking's lower-tier subcontractors, including AAA and Koch. A "Payment Recap Sheet" of Lydig's payments to Woodworking from July 2003 to April 27, 2004 indicates that joint-payee checks to Woodworking and AAA totaled $9,190.65 and joint-payee checks to Woodworking and Koch totaled $8,900.00, with $1,539.00 still owed to Koch. Clerk's Papers (CP) at 85. According to Lydig, although it had no contractual duties to

the lower-tier subcontractors, these payments were made to avoid possible claims by the lower-tier subcontractors against Lydig's chapter 39.04 RCW payment bond.

¶5 In April 2004, over two weeks after the last joint-payee check to Woodworking and AAA, Lydig obtained a release from AAA of all claims against Lydig and an assignment of all claims AAA had against Woodworking. The consideration supporting this release and assignment was payment by Lydig "of certain Subcontractor/Supplier balances in the amount of $9,190.65." CP at 265. That same month, Lydig—on behalf of AAA and Jacobs Upholstery (another alleged lower-tier subcontractor)—demanded from Accredited the entire $12,000 of Woodworking's license bond. Accredited responded informally with an "initial reaction" that Lydig was not a proper beneficiary to the statutory bond under Washington law. CP at 267.

¶6 Lydig filed a complaint in August 2004 seeking foreclosure on the bond in the name of AAA and Jacobs Upholstery.[1] Eventually realizing that Jacobs Upholstery had no contract with Woodworking, Lydig obtained an order of nonsuit dismissing that claim. Lydig then obtained an assignment of Koch's rights against Woodworking in September 2004 and in October 2004 filed an amended complaint seeking foreclosure of the bond in the names of AAA and Koch, further alleging a violation of the Consumer Protection Act, chapter 19.86 RCW.[2] In Accredited's answer to Lydig's amended complaint, it argued in part that the assignments were void due to lack of consideration and that it was liable for no more than one-half of the bond pursuant to RCW 18.27.040.

¶7 Lydig filed a motion for summary judgment in January 2005. Accredited responded with a motion to dismiss on

---

[1] In this memorandum we refer to the plaintiff as Lydig, although the lawsuit was filed in the name of the lower-tier subcontractors that had assigned their rights to Lydig.

[2] The consideration supporting Koch's assignment of rights was Lydig's payment "of certain Subcontractor/Supplier balances in the amount of $10,030." CP at 46.

the ground that the plaintiffs (AAA and Koch) were not the real parties in interest and with a motion to substitute Lydig as the real party in interest. In addition to the defenses already raised, Accredited argued that Woodworking had paid AAA and Koch and that Lydig actually owed Woodworking additional funds. The trial court denied Lydig's motion for summary judgment and Accredited's motions by order dated April 1, 2005.[3]

¶8 On March 25, 2005, Lydig filed a motion for partial summary judgment, seeking at least one-half of the license bond and attorney fees and costs. The trial court granted partial summary judgment on June 23, 2005, awarding Lydig $6,000 plus $20,500 in attorney fees and costs. Accredited's motion for reconsideration was denied. The parties stipulated to dismissal of the Consumer Protection Act claim and Accredited timely appealed.

JOINT-PAYEE RIGHTS AGAINST THE SURETY BOND

¶9 A surety is liable only if its principal is liable and may plead any defense the principal might have used. *McChord Credit Union v. Parrish*, 61 Wn. App. 8, 13-14, 809 P.2d 759 (1991). Accredited contends it is not liable to Lydig because its principal, Woodworking, paid AAA and Koch in full under their contracts by endorsing the joint-payee checks and delivering them to AAA and Koch.[4] At a minimum, Accredited argues, there is an issue of fact regarding

---

[3] Although the record is unclear, apparently the parties agree that one issue of material fact precluding summary judgment on this first motion was the fact that Accredited had not been properly served. Lydig cured the improper service in February 2005.

[4] Lydig contends this issue was only "fully" raised for the first time in Accredited's motion for reconsideration and urges this court to reject the argument. Resp't's Br. at 14. However, Accredited asserted from the beginning that Woodworking had paid AAA and Koch in full. It elaborated in the motion for reconsideration that endorsement of the joint checks constituted payment to AAA and Koch. This argument did not depend on new facts and was closely related to issues already raised. Accordingly, the issue was properly raised in the motion for reconsideration. *Anderson v. Farmers Ins. Co.*, 83 Wn. App. 725, 734, 923 P.2d 713 (1996).

Woodworking's liability to AAA and Koch that defeats summary judgment.

¶10 Because this is a review of a summary judgment, we engage in the same inquiry as the trial court and consider the facts in the light most favorable to the nonmoving party. *Labriola v. Pollard Group, Inc.*, 152 Wn.2d 828, 832-33, 100 P.3d 791 (2004). Summary judgment is appropriate only when there is no genuine issue of material fact and the moving party is entitled to judgment as a matter of law. *Id.*

¶11 All contracts are assignable unless prohibited by statute or public policy. *Puget Sound Nat'l Bank v. Dep't of Revenue*, 123 Wn.2d 284, 288, 868 P.2d 127 (1994). Generally, an assignee steps into the shoes of the assignor and acquires whatever rights the assignor had prior to the assignment. *Id.* at 292-93. Although an upper-tier contractor such as Lydig is not a beneficiary—in its own right—of a lower-tier contractor's surety bond, the upper-tier contractor may claim against the bond as an assignee of a beneficiary's rights. *Int'l Commercial Collectors, Inc. v. Mazel Co.*, 48 Wn. App. 712, 718, 740 P.2d 363 (1987). In *International*, the general contractor paid the amount of a judgment obtained against the subcontractor, received an assignment of the judgment creditor's rights against the subcontractor, and proceeded against the subcontractor's bond. *Id.* at 713-14. Here, AAA and Koch assigned to Lydig in writing all claims, demands, and causes of action related to the project that AAA and Koch had against Woodworking. Unlike in *International*, these claims had not been reduced to a judgment. The question then becomes whether and to what extent AAA and Koch had assignable claims against Woodworking at the time of the assignments. In answering that question, this court must examine the effect of the joint-payee checks on the contractual obligations between Woodworking and the lower-tier subcontractors.

¶12 An instrument that is payable to two or more people in the conjunctive "is payable to all of them and may be negotiated, discharged, or enforced only by all of them." RCW 62A.3-110(d). The use of joint checks is widespread in

the construction industry as a method for owners and general contractors to protect themselves from lien foreclosures by materials suppliers and lower-tier subcontractors whom higher-tier contractors and subcontractors have failed to pay. *See, e.g., Dauphin v. Smith*, 42 Wn. App. 491, 496, 713 P.2d 116 (1986); *Thrifty Supply Co. of Seattle v. Deverian Builders, Inc.*, 3 Wn. App. 425, 429, 475 P.2d 905 (1970); *Brown Wholesale Elec. Co. v. Beztak of Scottsdale, Inc.*, 163 Ariz. 340, 343, 788 P.2d 73 (1990); *Post Bros. Constr. Co. v. Yoder*, 20 Cal. 3d 1, 5, 569 P.2d 133, 141 Cal. Rptr. 28 (1977). Many jurisdictions (including Washington; *see Dauphin*, 42 Wn. App. at 496) have adopted the "joint check rule" to this purpose: "[w]hen a subcontractor and his materialman are joint payees, and no agreement exists with the owner or general contractor as to allocation of proceeds, the materialman by endorsing the check will be deemed to have received the money due him." *Post*, 20 Cal. 3d at 5.

¶13 By tendering a check payable jointly to the subcontractor, lower-tier subcontractors, and materials suppliers, and by leaving allocation of the joint check to the payees, the contractor ensures that all parties are paid and is protected from further demand. *Dauphin*, 42 Wn. App. at 496-97. If the lower-tier subcontractor endorses the check, a presumption arises that the lower-tier subcontractor has been paid the money due him or her under the contract with the subcontractor:

> In order to protect the general contractor from having to pay more than the amount he owes the subcontractor, the joint check rule creates a presumption that on endorsing the joint check, the subcontractor's materialman has received all sums then owed to him, even though he actually may have received only part or none of the amounts owed him.

*Brown*, 163 Ariz. at 344. In other words, if the lower-tier subcontractor returns the endorsed check to the joint-payee subcontractor without retaining funds due under the contract with the subcontractor, the lower-tier subcontractor cannot later file a claim against the contractor's bond for

that payment. However, the lower-tier subcontractor can file against the *subcontractor's* bond for payments still owed under the contract. *See Post*, 20 Cal. 3d at 8 ("Under the joint check rule the maker of the check is deemed to have paid the materialman-payee; the rule does not deal with the rights between the copayees and their sureties.").

¶14 Lydig argued to the superior court that its joint checks to Woodworking and AAA and to Woodworking and Koch were actually direct payments to AAA and Koch for amounts due from Woodworking. Because Lydig had no contractual obligation to pay AAA or Koch, it contends the payments were consideration for the assignments of AAA's and Koch's claims against Woodworking for failure to pay.[5] Lydig confuses the presumption that arises under the joint check rule with the actual effect of the joint-payee check on the subcontractor/lower-tier subcontractor obligation. Although the lower-tier subcontractor's endorsement of the joint check prevents future claims against the contractor (at least for amounts then due from the subcontractor up to the amount of the check, *see Medford Sch. Dist. No. 549C ex rel. N. Coast Elec. Co. v. Peterson & Jones Commercial Constr., Inc.*, 76 Or. App. 99, 102, 708 P.2d 623 (1985)), the contractor has not directly paid the subcontractor's obligation to the lower-tier subcontractor. The joint-payees may apply the proceeds of the check as they choose, subject to their own determination of rights to the funds. As a joint-payee, the lower-tier subcontractor or materialman is in a position to demand payment in full from the subcontractor in return for endorsement of the joint check. *Iowa Supply Co. v. Grooms & Co. Constr.*, 428 N.W.2d 662, 666 (Iowa 1988).

¶15 Here, by endorsing the joint checks and sending them to AAA and Koch, Woodworking signed over its shared ownership of the funds to the lower-tier subcontractors. In effect, the result was the same as if AAA and Koch had endorsed the checks, had sent them back to Woodworking

---

[5] It should be noted that nothing in the record indicates that Woodworking had failed to pay AAA or Koch according to the terms of their contracts.

for deposit in its account, and then had received checks for the same amounts written on Woodworking's account. Although Lydig contends it actually paid only AAA and Koch with the joint checks, even the payment recap sheet prepared by Lydig includes the multiple joint-payee checks in the column entitled "Net Amount Paid to Spokane Woodworking." CP at 85. Direct payments to Woodworking and joint checks to the lower-tier subcontractors are distinguished, but all are debited from the amount due to Woodworking on the contract.

¶16 Ultimately the question of whether a joint check constitutes payment of the amount owed by the subcontractor to the lower-tier subcontractor is a question of fact based upon the intention of the parties. *Thrifty Supply*, 3 Wn. App. at 428-29; *Rodeffer Indus., Inc. v. Chambers Estates, Inc.*, 263 Cal. App. 2d 116, 119, 69 Cal. Rptr. 551 (1968). The record here suggests that the parties considered the joint checks as payments of Woodworking's entire obligations to AAA and Koch, but nothing definitively exhibits this understanding. Because issues of material fact remain, and because Lydig is not entitled to recover on the bond as a matter of law, the trial court erred in granting summary judgment.

ATTORNEY FEES ON APPEAL

¶17 Both parties request attorney fees on appeal, citing RCW 18.27.040(6) (attorney fees and costs to the prevailing party in an action filed under this section) and RAP 18.1(a) (attorney fees and expenses if allowed by applicable law). Neither party has prevailed yet for the purposes of RCW 18-.27.040(6). Accordingly, the issue of attorney fees is referred to the trial court.

¶18 Summary judgment reversed.

SWEENEY, A.C.J., and BROWN, J., concur.