FILED
COURT OF APPEALS DIV I
STATE OF WASHINGTON

2013 DEC 16 AM 10: 39



# IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON
## DIVISION ONE

| | | |
|---|---|---|
| JESSICA MACLEAN, a married individual, | ) ) ) | No. 69548-7-I |
| Appellant, | ) ) ) | |
| v. | ) ) ) | |
| KATE CHASE RYAN, a married individual, and ADVANCED EDUCATORS, LLC, a Washington limited liability company, | ) ) ) ) ) | UNPUBLISHED OPINION |
| Respondents. | ) ) ) | FILED: December 16, 2013 |

VERELLEN, J. — Jessica MacLean prevailed against Advanced Educators, LLC at trial on her breach of oral contract claim. She now appeals the trial court's summary judgment dismissing her claims against Advanced Educators and Kate Chase Ryan, the sole member of Advanced Educators, for intentional interference with business expectancies. MacLean alleged that Advanced Educators tortiously interfered with her business expectancies by contacting the National Certification Board for Therapeutic Massage and Bodywork (National Certification Board) alleging MacLean had misused Advanced Educators' approved provider number. Even assuming prima facie evidence of tortious interference, Advanced Educators' decision to notify the National Certification Board was privileged. A written contract between the parties expressly provided that any misuse of Advanced Educators' provider number by MacLean entitled Advanced

Educators to notify the National Certification Board. MacLean's additional arguments regarding individual liability of Ryan are not persuasive. We affirm.

## FACTS

Jessica MacLean conducts trainings for massage and bodywork therapists, and does business under the names of EarthSpa Health Traditions and International Cupping Therapy Association. MacLean's courses are designed to meet state licensing requirements and count toward certification through the National Certification Board.

In July 2008, Kate Ryan, the sole member of Advanced Educators, approached MacLean to ask for her help in developing Advanced Educators' marketing materials. MacLean orally agreed to provide marketing services, including graphic design, to Advanced Educators in exchange for Advanced Educators' agreement to market MacLean's courses through 2009.

MacLean also suggested to Ryan that Advanced Educators should obtain approved provider status directly from the National Certification Board. By the end of 2008, Advanced Educators had obtained its own approved provider number from the National Certification Board.[1]

The parties then entered into a written contract that defined the terms by which MacLean would apply for certification of her courses to the National Certification Board using Advanced Educators' approved provider number, and the terms by which MacLean could advertise her courses using that number. The contract specifically provided:

---

[1] MacLean's courses were initially approved for continuing education credit in 2006 by the National Certification Board, using the approved provider number of the Northwest Coalition of Massage Educators.

2

- Instructors agree to use very specific terminology to denote that *only their CLASSES* are [National Certification Board] approved. Advanced Educators will be the "Approved Provider" and *at no time* may an Instructor imply that they are the "Approved Provider."

- Inappropriately representing [Advanced Educators], the [National Certification Board,] or your status as a provider will result in immediate discontinuation of your relationship with [Advanced Educators] as well as termination of your relationship with [the National Certification Board] via Advanced Educators.[2]

According to MacLean, she fulfilled her obligation to provide marketing consulting services, but Ryan failed to list and market MacLean's classes on the Advanced Educators' website and in other Advanced Educators' marketing materials. Ryan sent an e-mail to her website editor in November 2008 directing him not to devote time to MacLean's course materials because Ryan was going to "fire" MacLean anyway. According to MacLean, she properly submitted her class schedule for inclusion on Advanced Educators' website, but Ryan failed to list and market it.

On July 14, 2009, Ryan wrote to MacLean, informing her that due to McLean's misuse of Advanced Educators' approved provider number in an Oregon periodical called Massage Monthly, Ryan was terminating MacLean from the Advanced Educators National Certification Board program. She also informed MacLean that she sent letters to the National Certification Board informing them of MacLean's misuse of the Advanced Educators' approved provider number.[3] As a result, MacLean's courses were no longer credentialed through Advanced Educators, and any certificates MacLean had issued from the beginning of 2009 through July 14, 2009 were invalid.

---

[2] Clerk's Papers at 39.

[3] These letters are not included in the record.

Because attendees of MacLean's courses need the approved provider status to obtain continuing education credit, MacLean's classes were cancelled.

On July 29, 2010, MacLean received a letter from the National Certification Board informing her that her application for her own approved provider number had been denied due to MacLean's alleged ongoing misuse of the National Certification Board trademark from as early as April 2008.[4]

On November 11, 2009, Ryan sent a letter to the National Certification Board to inform it that MacLean had been publishing her own certificates for course completion, contrary to the provision in the parties' contract, stating, "While an Instructor may distribute a proprietary certificate of some sort, the official [National Certification Board] certification will be e-mailed only by [Advanced Educators]."[5] The November letter also repeated that MacLean had misused Advanced Educators' provider number. By December 2010, MacLean resolved the "misunderstanding" with the National Certification Board and obtained her own approved provider number.

MacLean filed suit against Advanced Educators and Ryan individually on August 26, 2010 for breach of oral contract, quantum meruit/unjust enrichment, violation of the Consumer Protection Act, and intentional interference with business expectancies. Advanced Educators and Ryan moved for summary judgment dismissal of all of MacLean's claims.[6] The trial court dismissed with prejudice the claims for tortious inference and emotional distress. The court dismissed without prejudice the

---

[4] According to MacLean, the only error in using Advanced Educators' approved provider number occurred because of a typographical error in the Massage Monthly newsletter, which advertised that MacLean was the actual approved provider.

[5] Clerk's Papers at 40.

[6] MacLean also requested emotional distress damages.

Consumer Protection Act claim.[7] Finally, the court dismissed with prejudice all of the claims against Ryan individually.

The breach of oral contract claim went to trial and MacLean prevailed, obtaining a judgment against Advanced Educators for $49,223. MacLean appeals the trial court's dismissal of her claims for intentional interference with business expectancies against Advanced Educators and the dismissal of her claims against Ryan individually.[8]

## DISCUSSION

We review de novo a trial court's decision on summary judgment, performing the same inquiry as the trial court.[9] We may affirm an order granting summary judgment on any basis supported by the record.[10, 11]

### a. Tortious Interference Against Advanced Educators

The elements of a claim for tortious interference with a business expectancy are: (1) a valid contractual relationship or business expectancy; (2) the defendant's

---

[7] The orders dismissing the claims do not address the status of the unjust enrichment claim.

[8] MacLean has not appealed the dismissal of her claims against Advanced Educators for the Consumer Protection Act violation and emotional distress.

[9] Lybbert v. Grant County, 141 Wn.2d 29, 34, 1 P.3d 1124 (2000). We view all facts and reasonable inferences therefrom most favorably toward the nonmoving party. Id. Summary judgment is proper if the pleadings, affidavits, and depositions establish that there is no genuine issue as to any material fact and the moving party is entitled to judgment as a matter of law. Id.; CR 56(c). If the nonmoving party fails to controvert material facts supporting the summary judgment motion, those facts are considered to be established. Cent. Wash. Bank v. Mendelson-Zeller, Inc., 113 Wn.2d 346, 354, 779 P.2d 697 (1989).

[10] LaMon v. Butler, 112 Wn.2d 193, 200-01, 770 P.2d 1027 (1989).

[11] Ryan has moved to strike the four exhibits MacLean designated for inclusion in the appellate record. Consistent with RAP 9.12, we consider only the evidence presented to the court on summary judgment. Therefore, we do not consider Exhibits 85 and 86. We do consider Exhibits 75 and 89 because those are duplicates of exhibits presented on summary judgment.

knowledge of the relationship or expectancy; (3) an intentional interference inducing a breach or termination of that relationship; (4) interference by an improper purpose or improper means; and (5) damages.[12] Even if a plaintiff has prima facie evidence of all five elements, the defendant may refute the claim by showing the actions were privileged.[13]

MacLean contends the record definitively establishes the first three elements and that there are genuine issues of material fact as to the fourth and fifth elements. Advanced Educators concedes it had knowledge of MacLean's business expectancies, but argues MacLean lacks prima facie evidence of all other elements. Further, Advanced Educators argues that Ryan's decision to contact the National Certification Board was contractually privileged. We agree, and therefore decline to analyze whether MacLean presented prima facie evidence of all five elements.

Under Washington law, an "interferor" may assert a defense to intentional interference based on privilege:

> The basic issue raised by the assertion of the defense is whether, under the circumstances of the particular case, the interferor's conduct is justifiable, bearing in mind such factors as the nature of the interferor's conduct, the character of the expectancy with which the conduct interferes, the relationship between the various parties, the interest sought to be advanced by the interferor, and the social desirability of protecting the expectancy or the interferor's freedom of action.[14]

---

[12] Leingang v. Pierce County Med. Bureau, Inc., 131 Wn.2d 133, 157, 930 P.2d 288 (1997).

[13] Pleas v. City of Seattle, 112 Wn.2d 794, 800, 774 P.2d 1158 (1989).

[14] Calbom v. Knudtzon, 65 Wn.2d 157, 163, 396 P.2d 148 (1964).

Therefore, "[e]ven if a prima facie case is made out, one who in good faith asserts a legally protected interest of his own that he believes may be impaired . . . is not guilty of tortious interference."[15]

MacLean relies on two instances of alleged interference: (1) the reference in the July 14, 2009 letter from Advanced Educators to MacLean that Ryan had already contacted the National Certification Board to report MacLean's misuse of Advanced Educators' approved provider number,[16] and (2) Ryan's November 11, 2009 e-mail to the National Certification Board to repeat that MacLean had misused Advanced Educators' approved provider number.

Based on the written contract, Advanced Educators had the right to immediately discontinue MacLean's relationship with Advanced Educators and terminate the relationship with the National Certification Board via Advanced Educators in the event MacLean "[i]nappropriately represent[ed] [her] status as a provider."[17] The contract

---

[15] Dauphin v. Smith, 42 Wn. App. 491, 495, 713 P.2d 116 (1986); Quadra Enters., Inc. v. R.A. Hanson Co., Inc., 35 Wn. App. 523, 526-27, 667 P.2d 1120 (1983); RESTATEMENT (SECOND) OF TORTS § 773, at 52 (1977) (exercising in good faith one's legal interests is not improper interference); see, e.g., Elcon Const., Inc. v. E. Wash. Univ., 174 Wn.2d 157, 168-69, 273 P.3d 965 (2012) (university sent a copy of the termination for cause letter to a drilling contractor's surety; court reasoned that the university had an interest in notifying the contractor's surety of its potential claim, therefore the university had not intentionally interfered with contractor's business interests).

[16] The June 2009 letter also stated that Advanced Educators would withdraw certification of all MacLean's classes dating back to January 2009 due to the allegation that MacLean had provided certificates to course attendees that were not issued by Advanced Educators. We do not address this claim of interference, as these actions related to past course participants, not to prospective course participants. A valid business expectancy includes any *prospective* contractual or business relationship that would be of pecuniary value. Newton Ins. Agency & Brokerage, Inc. v. Caledonian Ins. Group, Inc., 114 Wn. App. 151, 158, 52 P.3d 30 (2002).

[17] Clerk's Papers at 39.

explicitly identified the consequences of misuse of the approved provider number. When Advanced Educators learned that the advertisement placed by MacLean in the Massage Monthly newsletter misrepresented that MacLean was the approved provider, Ryan notified the National Certification Board that MacLean had misused Advanced Educators' approved provider number. The written contract expressly provided for such notice to the National Certification Board. Advanced Educators had a legitimate interest in ensuring it would not lose its certification due to MacLean's alleged misuse of the number.[18] Finally, Ryan's communication with the National Certification Board does not reveal a bad faith attempt to interfere with MacLean's then-pending application for her own provider number.

Because the action taken by Advanced Educators/Ryan in notifying the National Certification Board was specifically allowed by the contract between the parties, we hold that dismissal of the intentional interference claim against Advanced Educators was proper.[19]

b. Individual Claims Against Ryan

MacLean named Ryan individually as an additional defendant in her intentional interference and Consumer Protection Act claims. She argues the trial court improperly

---

[18] Ryan stated in her declaration, "The purpose of my communication to [the National Certification Board] was to ensure that Advanced Educators, LLC's certification would not be impacted by Plaintiff's improper actions." Clerk's Papers at 69. In MacLean's reply brief, she argues the minor typographical error in the Massage Monthly newsletter that incorrectly implied she was a preferred provider should not trigger the contract provision allowing for termination of her use of Advance Educators' provider number. Advanced Educators had the right under the plain language of the contract to report the misuse, however insignificant, to the National Certification Board.

[19] Advanced Educators argues MacLean's intentional interference claim is precluded by the independent duty doctrine, but the Washington Supreme Court specifically has held the independent duty rule does not bar a claim for tortious interference. Elcon, 174 Wn.2d at 165-66.

8

dismissed the individual claims against Ryan on summary judgment because RCW 25.15.125(1) provides that members or managers of a limited liability company are personally liable for their own torts. But MacLean misunderstands the rest of RCW 25.15.125(1), which specifically provides that the liability of a limited liability company, "whether arising in contract, tort or otherwise, shall be solely the . . . liabilities of the limited liability company." She also fails to recognize that the privilege held by Advanced Educators also extends to Ryan, who legitimately acted on behalf of the limited liability company.

Notwithstanding the liability shield set forth in RCW 25.15.125(1), "[a]n . . . agent is personally liable to a third party injured by his or her tortious conduct, even if that conduct occurs within the scope of employment or agency."[20] "But '[a]n agent is subject to tort liability to a third party harmed by the agent's conduct only when the agent's conduct breaches a duty that the agent owes to the third party.'"[21]

MacLean argues that because "no one but [Ryan] made the decision to intentionally and wrongfully interfere with plaintiff's business expectancies," Ryan is not protected by RCW 25.15.125(1).[22]

While MacLean is correct that Ryan could theoretically be individually liable for tortious conduct, the intentional interference claim against Ryan fails as a matter of law because both Advanced Educators' and Ryan's actions were privileged. An agent of a corporation is shielded from individual liability for intentional interference with a business expectancy so long as the actions of the agent are done on behalf of the corporate

---

[20] Annechino v. Worthy, 175 Wn.2d 630, 638, 290 P.3d 126 (2012).

[21] Id. (quoting RESTATEMENT (THIRD) OF AGENCY § 7.02 (2006)).

[22] App. Br. at 22.

principle in good faith, which "in this context means nothing more than an intent to benefit the corporation."[23] "The good faith test merely prevents corporate officers from pursuing purely personal goals with no intent to benefit the corporation."[24] This defense to a claim of intentional interference is sometimes analyzed as a matter of privilege.[25]

We have concluded that Advanced Educators' conduct in enforcing its contract right to protect its own account provider number was a privileged act. Advanced Educators acted through its agent, Ryan. There is no showing that Ryan was pursuing a purely personal goal. Ryan is not subject to personal liability for asserting the legitimate privilege on behalf of Advanced Educators.

Additionally, to the extent MacLean's arguments suggest she can reach Ryan by "piercing the corporate veil" of the limited liability company, she provides no persuasive argument. RCW 25.15.060[26] permits a court to pierce the veil of a limited liability company and hold a member personally liable if respecting the limited liability company form would work injustice. To pierce the corporate veil, a plaintiff must show (1) the corporate form was used to violate or evade a duty, and (2) the corporate veil must be disregarded to prevent loss to an innocent party.[27] MacLean presents no evidence or

---

[23] Olympic Fish Prods. Inc. v. Lloyd, 93 Wn.2d 596, 599, 611 P.2d 737 (1980).

[24] Id. at 600.

[25] See, e.g., Deep Water Brewing LLC v. Fairway Resources Ltd., 152 Wn. App. 229, 263, 215 P.3d 990 (2009) ("The issue does appear to be treated as a matter of privilege or justification.").

[26] "Members of a limited liability company shall be personally liable for any act, debt, obligation, or liability of the limited liability company to the extent that shareholders of a Washington business corporation would be liable in analogous circumstances."

[27] Wash. Water Jet Workers Ass'n v. Yarbrough, 151 Wn.2d 470, 503, 90 P.3d 42 (2004).

argument to demonstrate either that the corporate form was used to violate or evade a duty or that the corporate veil must be disregarded to prevent loss to an innocent party.

Finally, MacLean contends that the Consumer Protection Act claim applies to Ryan individually. But MacLean provides only a general summary of the elements and a citation to a single case where the unfair act or practice extended to an individual owner of a business. MacLean has not even discussed how the evidence might satisfy the Hangman Ridge requirements for Consumer Protection Act claims.[28] MacLean has not provided adequate briefing to support her theory that Ryan could be individually liable under the Consumer Protection Act.

Affirmed.

WE CONCUR:

---

[28] Hangman Ridge Training Stables, Inc. v. Safeco Title Ins. Co., 105 Wn.2d 778, 785-86, 719 P.2d 531 (1986).