

FILE
IN CLERKS OFFICE
SUPREME COURT, STATE OF WASHINGTON

DATE AUG 0 3 2017

~~Fairhurst~~ CQ
CHIEF JUSTICE

This opinion was filed for record

at 8:00 am on Aug 3, 2017

SUSAN L. CARLSON
SUPREME COURT CLERK

# IN THE SUPREME COURT OF THE STATE OF WASHINGTON

| | | |
|---|---|---|
| SELENE RMOF II REO ACQUISITIONS II, LLC, | ) ) ) | No. 92967-0 |
| Petitioner, | ) ) ) | |
| v. | ) ) | |
| VANESSA D. WARD and all occupants of the premises located at 7913 South 115th Place m/k/a 7911 South 115th Place, Seattle, WA 98178, | ) ) ) ) ) ) | En Banc |
| Respondents. | ) ) ) | Filed AUG 0 3 2017 |

MADSEN, J.—This case involves transfers of property that once belonged to Vanessa Ward and now belongs to Selene RMOF II REO Acquisitions II LLC, which acquired the property in 2012 from a purchaser at a nonjudicial foreclosure sale. It also concerns Ward's claim that she was the victim of mortgage fraud regarding the property in 2004 and that all subsequent property transfers were therefore void.[1] Selene challenges an unpublished Court of Appeals, Division One, decision reversing an order granting Selene a writ of restitution evicting Ward from Selene's property. At issue is whether Selene was authorized to bring an unlawful detainer action as a purchaser from someone who had bought the property at a nonjudicial foreclosure sale. Also at issue is

---

[1] Ward appeared pro se below.

whether the summary procedures of unlawful detainer were available where Ward asserted ownership of the property she occupied via an unrecorded quitclaim deed. We hold that unlawful detainer was available to Selene under the circumstances of this case and reverse the Court of Appeals.

## FACTS

The disputed property is a single family residence in King County. Parcel data from the King County Department of Assessments shows that Ward bought the property in 1999 by statutory warranty deed. It also shows that Ward quitclaimed the property to Chester Dorsey in 2000 in a transaction involving foreclosure. Ward asserts that in 2004, Dorsey quitclaimed the property back to her through a deed that was notarized but never recorded.[2] Parcel data of course does not show that alleged transaction, but it shows rather that in 2005, Dorsey sold the property by statutory warranty deed to Fred and Grace Brooks, who in turn sold it by statutory warranty deed to James Dreier in 2007.

Dreier executed a deed of trust on the property to secure a loan, and in 2009, LaSalle Bank acquired the property at a nonjudicial foreclosure sale on the deed of trust. Ward still occupied the property, and LaSalle and its successor filed two unlawful detainer actions against her but apparently did not further pursue them. In 2012, LaSalle sold the property to Selene by special warranty deed, and in 2014, Selene filed a third unlawful detainer action against Ward, alleging that she was "believed to be a tenant of the former owner of the property." Clerk's Papers (CP) at 1, 79. Selene further alleged

---

[2] Ward provided a quitclaim deed that appears to be dated December 2, 2004, and shows only a fragment of a notary stamp.

that Selene had acquired its interest from LaSalle after foreclosure and that pursuant to RCW 61.24.060 (discussed below), the purchaser at a trustee's sale had a right to summary unlawful detainer proceedings to obtain possession of the property under chapter 59.12 RCW. An initial writ of restitution was ordered and then vacated for lack of proper service. Ward subsequently moved for an order setting the case for trial and denying the writ of restitution, contending that the unlawful detainer proceeding could not go forward because she had color of title and was not a tenant.

At the unlawful detainer hearing, Ward repeatedly asserted that she was the property owner, that she had paid the mortgage until 2007, and that she was the victim of fraud involving Dorsey and another person who had stolen and then paid off her mortgage. Am. Verbatim Report of Proceeding (VRP) at 1-6, 18, 20. But she admitted that she had not made any mortgage payments since 2007 and that she had notice of the foreclosure proceeding. She testified that she filed a lawsuit to enjoin the foreclosure on the day of the sale, but she admitted that her suit was dismissed because she failed to pursue it.

The trial court granted a writ of restitution to Selene, stating that Ward had had time either to appeal the dismissal of her suit or pursue other remedies. Ward appealed, and Division One reversed in an unpublished decision, holding that because Ward held a quitclaim deed to the property, the summary unlawful detainer action was not available. *Selene RMOF II REO Acquisitions II, LLC v. Ward*, No. 72504-1-I, slip op. at 1 (Wash. Ct. App. Feb. 29, 2016) (unpublished), http://www.courts.wa.gov/opinions/PDF/725041.pdf, *review granted*, 186 Wn.2d 1008,

3

380 P.3d 458 (2016). Division One also held that because Selene did not purchase the property at the foreclosure sale, unlawful detainer proceedings under RCW 61.24.060(1) did not apply. *Id.* Selene petitioned for review, which this court granted.

ANALYSIS

Whether unlawful detainer is available to Selene

"As with all questions of law, questions of statutory interpretation are reviewed de novo." *Berrocal v. Fernandez*, 155 Wn.2d 585, 590, 121 P.3d 82 (2005). Here, the Court of Appeals held that because Selene was not the initial purchaser at the nonjudicial foreclosure sale, it could not bring an unlawful detainer action under RCW 61.24.060(1) to obtain possession of the property that it owned. RCW 59.12.032 provides, "An unlawful detainer action, commenced as a result of a trustee's sale under chapter 61.24 RCW, must comply with the requirements of RCW 61.24.040 [(addressing service requirements)] and 61.24.060." Thus, RCW 59.12.032 "authorizes the purchaser at a deed of trust foreclosure sale to bring an unlawful detainer action to evict the previous owner of the home, provided the sale complied with the statutory foreclosure rules." *Fed. Nat'l Mortg. Ass'n v. Ndiaye*, 188 Wn. App. 376, 381, 353 P.3d 644 (2015). RCW 61.24.060(1) provides, in relevant part, "The purchaser at the trustee's sale shall be entitled to possession of the property on the twentieth day following the sale . . . . The purchaser shall also have a right to the summary proceedings to obtain possession of real property provided in chapter 59.12 RCW." *See also Ndiaye*, 188 Wn. App. at 381-82. Restated, "[a]s a means to gain possession of real property, unlawful detainer is available to one who holds a title as a purchaser at a deed of trust foreclosure sale." *Id.* at 384

4

(citing *Puget Sound Inv. Grp., Inc. v. Bridges*, 92 Wn. App. 523, 526, 963 P.2d 944 (1998)); *see also* RCW 61.24.060(1).

In *Savings Bank of Puget Sound v. Mink*, 49 Wn. App. 204, 741 P.2d 1043 (1987), Division One discussed the legislative intent underlying the availability of unlawful detainer in the nonjudicial foreclosure context. Division One stated:

> [Chapter 61.24 RCW] provides the method for nonjudicial foreclosure of a deed of trust. The chapter was designed by the Legislature to avoid costly, time-consuming judicial foreclosure proceedings, and also to "provide an adequate opportunity [or notice] for interested parties to prevent wrongful foreclosure." Detailed notice requirements for each stage of the foreclosure proceeding are set forth in the chapter.

*Id.* at 207-08 (citations omitted) (quoting *Cox v. Helenius*, 103 Wn.2d 383, 387, 693 P.2d 683 (1985)). Concerning unlawful detainer, the court opined:

> For its part, [chapter 59.12 RCW] is designed to provide expeditious, summary proceedings for the removal of persons in the possession of the property of another, *Munden v. Hazelrigg*, 105 Wn.2d 39, 711 P.2d 295 (1985), who are either in breach of a condition to that occupancy, have committed waste, have unlawfully entered, or have held over after expiration of a tenancy for a definite term. [(Citing former RCW 59.12.030 (1983) (defining "unlawful detainer").] *We believe that the Legislature intended to preserve the summary nature of foreclosure actions permitted under [chapter 61.24 RCW] in referring purchasers to the unlawful detainer statutes for the removal of "reluctant" former owners.* [Chapter 61.24 RCW] provides for detailed notices and provides opportunities to cure for the defaulting property owner. . . . Application of [unlawful detainer] to these proceedings will provide a remedy that is consistent with the *spirit and intent* of the Legislature in enacting [chapter 61.24 RCW] and will do so without prejudice to the rights of the defaulting party. We so hold.

*Id.* at 208 (emphasis added) (footnote omitted). Division Three has similarly recognized the underlying legislative impetus behind RCW 61.24.060(1), stating:

> The statutory scheme of the act gives the purchaser at a trustee's sale the right to possession on the 20th day following the sale. RCW 61.24.060. The act was designed by the legislature to avoid time-consuming judicial foreclosure proceedings and to save substantial time and money to both the buyer and the lender. This feature of the act has been applauded as meeting the needs of modern real estate financing. By the terms of the act *it is clear the legislature did not contemplate that after the trustee's sale further lengthy proceedings would be required to obtain possession.* It gave the purchaser at a trustee's sale the right to obtain possession of the real property by summary proceedings in an unlawful detainer action.

*Peoples Nat'l Bank of Wash. v. Ostrander*, 6 Wn. App. 28, 31, 491 P.2d 1058 (1971) (emphasis added) (citation omitted).

In light of the noted legislative intent, it would be anomalous to read RCW 61.24.060(1) to thwart such intent by limiting the availability of unlawful detainer to the first purchase following a nonjudicial foreclosure sale. By its terms, the statute makes available expedited eviction proceedings to the property's deed holder following a nonjudicial foreclosure sale. But the statute's language does not expressly limit the availability of unlawful detainer to only the first owner of the property following foreclosure. To read the statute as doing so, as Ward advocates, defeats the noted legislative purpose of providing expedited proceedings to facilitate real estate financing and transactions.

Finding no Washington cases directly on point, Selene relies on *Evans v. Superior Court*, 67 Cal. App. 3d 162, 136 Cal. Rptr. 596 (1977). There, the California appellate court addressed the comparable question presented here, "[w]hether a subsequent purchaser from a purchaser at a foreclosure sale can maintain an unlawful detainer action under [the California unlawful detainer statute, California Code of Civil Procedure

6

section 1161a]." *Id.* at 167. The *Evans* court explained that while the cause of action for unlawful detainer was historically available only to a landlord against his tenant, the remedy has been expanded by statute to additional categories of plaintiffs and defendants. The *Evans* court noted that California Code of Civil Procedure section 1161a, which provides for removal of holdover persons in various circumstances, is framed in terms of the events that may give rise to the unlawful detainer action and the persons against whom such actions may be brought, but the statute is silent as to who may bring such actions. *Id.* The *Evans* court stated, *"The policy behind the statute is clear, however: to provide a summary method of ouster where an occupant holds over possession after sale of the property. That policy would not be served by restricting availability of the action to the original purchaser at a foreclosure sale." Id.* at 168 (emphasis added). Accordingly, the *Evans* court held that "a subsequent purchaser from a purchaser at a foreclosure sale may bring an [unlawful detainer] action [under California Code of Civil Procedure section 1161a]." *Id.* at 169-70.[3] The result in *Evans* comports with the legislative intent and purpose of RCW 61.24.060(1) as noted in *Mink* and *Ostrander*.

Further, the interest obtained by LaSalle as the purchaser at the foreclosure sale clearly included the right to pursue the unlawful detainer action against Ward, as provided in RCW 61.24.060(1). Also, as the holder of the trust deed, LaSalle took "all of the right, title, and interest" in the property that the foreclosure sale conveyed. *See* RCW

---

[3] The *Evans* court also held that because the unlawful detainer complaint addressed only possession of the property, the occupiers' responsive answers, which raised defenses or counter claims concerning title issues, were not cognizable; and the occupiers' remedy was to seek adjudication of such title claims in a separate quiet title action. 67 Cal. App. 3d at 170-72.

61.24.050(1); *Udall v. T.D. Escrow Servs., Inc.*, 159 Wn.2d 903, 910, 154 P.3d 882 (2007).[4]

LaSalle's subsequent transfer to Selene by special warranty deed conveyed LaSalle's entire interest "in fee simple." *See* RCW 64.04.040 (bargain and sale deed convey's grantor's entire interest "in fee simple"). LaSalle's ownership rights, which included the right to possess the property, transferred to Selene via the special warranty deed. *Cf. Mfd. Hous. Cmtys. of Wash. v. State*, 142 Wn.2d 347, 364, 13 P.3d 183 (2000) (right to possess, exclude others, and dispose of property are fundamental attributes of property ownership). Because Selene received all of LaSalle's ownership rights, Division One's holding, which would permit owner LaSalle to pursue an unlawful detainer action to recover possession of the property but would bar conveyee owner Selene from doing the same, is contrary to the legislative "spirit and intent" behind the statutory scheme as discussed above, and finds no support in law. *See Mink*, 49 Wn. App. at 208; *cf. Mut. of Enumclaw Ins. Co. v. USF Ins. Co.*, 164 Wn.2d 411, 424, 191 P.3d 866 (2008) (assignee steps into the shoes of the assignor and has all of the rights of the assignor); *Puget Sound Nat'l Bank v. Dep't of Revenue*, 123 Wn.2d 284, 292, 868 P.2d 127 (1994) (assignee's rights include not only those identified in the contract, but also applicable statutory rights); *AAA Cabinets & Millwork, Inc. v. Accredited Sur. & Cas. Co.*, 132 Wn. App. 202, 208, 130 P.3d 887 (2006) (assignee acquires whatever

---

[4] The trust deed, which contained recitals that it complied with the requirements of chapter 61.24 RCW (deeds of trust act), is "prima facie evidence" of a proper sale and "conclusive evidence thereof in favor of bona fide purchasers." RCW 61.24.040(7).

rights the assignor had prior to the assignment). Accordingly, we hold that because

LaSalle conveyed its entire interest to Selene, Selene may pursue the unlawful detainer

action under RCW 61.24.060(1) to obtain possession of the conveyed property.

Color of Title

Relying on RCW 59.12.030(6), the Court of Appeals held that Ward's 2004

quitclaim deed provided her with "color of title" sufficient to render the summary

unlawful detainer procedures unavailable and, thus, Selene must establish superior title

via a quiet title action before it may proceed with eviction.[5] *Selene*, slip op. at 1. For the

reasons discussed below, we reverse.

As a threshold matter, *Ndiaye*, which views unlawful detainer in the context of

nonjudicial foreclosure, provides an appropriate resolution of this case. As Division

Three reiterated in *Ndiaye*, "Unlawful detainer is a summary proceeding for obtaining

possession of real property, and the cause of action holds priority in scheduling over

other civil cases." 188 Wn. App. at 382. The action is narrow, "limited to the question

of possession and related issues such as restitution of the premises and rent." *Id.* (citing

*Munden*, 105 Wn.2d at 45). "Unlawful detainer actions offer a plaintiff the advantage of

speedy relief, but do not provide a forum for litigating claims to title." *Id.* Counterclaims

may not be asserted in an unlawful detainer action. *Id.* (citing *Granat v. Keasler*, 99

Wn.2d 564, 570, 663 P.2d 830 (1983)). The "only exception" to this rule is "when the

---

[5] RCW 59.12.030(6) provides that "[a] person who, without the permission of the owner and without having color of title thereto, enters upon land of another and who fails or refuses to remove therefrom after three days' notice" is guilty of unlawful detainer.

counterclaim, affirmative equitable defense, or setoff is 'based on facts which excuse a tenant's breach.'" *Id.* (internal quotation marks omitted) (quoting *Munden*, 105 Wn.2d at 45).

In *Ndiaye*, the Federal National Mortgage Association (Fannie Mae), which purchased the property in question at a nonjudicial foreclosure sale, sought a writ of restitution in an unlawful detainer proceeding to evict the occupier of the foreclosed home. In his answer, the occupier asserted in part "title defects" that affected Fannie Mae's trustee's deed. *Id.* at 380. The trial court issued the writ, ruling that an unlawful detainer action is not the appropriate place to raise a collateral attack on the nonjudicial foreclosure. *Id* at 381.

In affirming, Division Three noted that "[i]n a nonjudicial foreclosure, the grantor of the deed of trust, when facing the loss of his property, can bring an action to restrain the trustee's sale 'on any proper legal or equitable ground,'" *id.* at 382 (quoting RCW 61.24.130(1)), and that "[f]ailure to pursue presale remedies can . . . constitute equitable waiver of those defenses." *Id.* (citing RCW 61.24.040(1)(f)(IX)).[6] "Allowing the borrower to delay asserting a defense until after the sale would defeat the spirit and intent of the deed of trust act." *Id.* at 382-83 (citing *Plein v. Lackey*, 149 Wn.2d 214, 228, 67 P.3d 1061 (2003)). Division Three held that under the circumstances of the case, "waiver

---

[6] As Division Three observed, "[W]aiver of defenses to a trustee's sale occurs when a party: (1) received notice of the right to restrain the sale, (2) had actual or constructive knowledge of a defense to foreclosure prior to the sale, and (3) failed to bring an action to obtain a court order enjoining the sale." *Ndiaye*, 188 Wn. App. at 382 (citing *Albice v. Premier Mortg. Servs. of Wash., Inc.*, 174 Wn.2d 560, 569, 276 P.3d 1277 (2012); *Plein v. Lackey*, 149 Wn.2d 214, 227, 67 P.3d 1061 (2003)).

applies as a matter of law." *Id.* at 383. Ndiaye defended the unlawful detainer action, asserting that Fannie Mae could not perfect its chain of title. *Id.* But because title transfers were a matter of public record, Ndiaye had constructive notice of any defect in the chain of title before the foreclosure sale. *Id.* at 383-84. "One cannot be heard to say that he did not know of these matters which were open, obvious, and of public record." *Id.* at 384. In affirming the writ, Division Three stated, "Questions of title are usually a matter of public record. [Accordingly,] unlawful detainer actions are not the proper forum to litigate questions of title." *Id.*

Under *Ndiaye*, Ward cannot bring her title challenge as a defense in the unlawful detainer action; the appropriate time to assert such challenge was prior to foreclosure. In response to questioning by the commissioner, Ward admitted at the unlawful detainer show cause hearing that at the time of the foreclosure, she had notice of the pending sale and in fact filed a lawsuit to stop it, apparently raising her title challenge and assertions of fraudulent transfer. *See* CP at 29; VRP at 17-23. However, she explained that because she "didn't submit something," her suit was ultimately dismissed with prejudice. VRP at 21. Ward did not seek review of that dismissal, and thus her title challenge is waived. *See Ndiaye*, 188 Wn. App. at 382-84. Thus, as a threshold matter, applying *Ndiaye* to the circumstances of this case, Ward is foreclosed from asserting her title challenge as a defense to the unlawful detainer action.

*Mink* is in accord. There, the occupier of the property asserted numerous defenses and counterclaims in the unlawful detainer action. Division One reiterated that "an action under RCW 59.12.030 'is a narrow one, limited to the question of possession and related

11

issues such as restitution of the premises and rent. In order to protect the summary nature of the unlawful detainer proceedings, other claims, including counterclaims, are generally not allowed.'" *Mink*, 49 Wn. App. at 208-09 (quoting *Munden*, 105 Wn.2d at 45). Mink's affirmative defenses and counterclaims included allegations of slander of title and fraud. Division One held, "These do not directly relate to the 'question of possession' and may not be raised in an unlawful detainer action." *Id.* at 209. The court held that Mink was not precluded from raising his claims, but he must do so "in the proper proceeding." *Id.* at 210; *see Evans*, 67 Cal. App. 3d at 170-72 (occupiers remedy was to seek adjudication of their title claims in a separate quiet title action, not as defenses in the unlawful detainer action). *Ndiaye* and *Mink* provide the appropriate resolution here. Ward cannot assert a title claim in this unlawful detainer action.

As to Ward's assertion of color of title, the Court of Appeals relied on its prior decision in *Bridges*, 92 Wn. App. 523. There, an investment group purchased property at a public auction following the federal Internal Revenue Service's (IRS) foreclosure of a tax lien on the home in question. Following the sale, the IRS issued the purchaser a quitclaim deed. *Id.* at 525. The investment group sought a writ of restitution for possession of the property under RCW 59.12.030(6). Division One held that while the legislature had authorized the purchaser at a deed of trust foreclosure sale to bring an unlawful detainer action under RCW 61.24.060, "[t]he Legislature has not provided a purchaser of real property at a federal income tax foreclosure sale with similar authority to bring an unlawful detainer action." *Id.* at 526. Division One also held that the tax sale purchaser could not pursue unlawful detainer under RCW 59.12.030(6) because the

occupant held a "statutory warranty deed" and thus color of title. *Id.* at 527. Accordingly, under *Bridges* the tax sale purchaser, who holds *only* a quitclaim deed on the real property in question, must establish superior title in a quiet title action against the occupier of the real property, who holds a statutory warranty deed, before such purchaser can pursue an unlawful detainer action against the occupier under RCW 59.12.030(6). The tax sale addressed in *Bridges* is not the deed of trust foreclosure sale present here.

Because the circumstance here is markedly different, Division One's reliance on *Bridges* is inappropriate.[7] First, the quitclaim deed that Ward proffered contains an unreadable notary signature and only a fragment of a notary seal. That fragment does not show the notary's number or full name. *See* CP at 45. The document is dubious, and, more importantly, it is unrecorded.

"Title to real property can only be conveyed by a valid, acknowledged deed . . . . RCW 64.04.010, .020." *Fid. Mut. Sav. Bank v. Mark*, 112 Wn.2d 47, 53, 767 P.2d 1382 (1989). RCW 64.04.010 provides that "[e]very conveyance of real estate, or any interest therein . . . shall be by deed." "[U]nder Washington law, the general rule is that a transfer of an interest in real property cannot occur absent a deed." *In re Betchan*, 524 B.R. 830, 832 (Bankr. E.D. Wash. 2015). RCW 64.04.020 requires that "[e]very deed shall be in writing, signed by the party bound thereby, and acknowledged by the party before some person authorized by this act to take acknowledgments of deeds." (Reviser's

---

[7]As discussed above, RCW 61.24.060(1) provides that the purchaser at a deed of trust foreclosure sale may bring an unlawful detainer action against an occupier of the property. For the noted reasons, that interest transferred from nonjudicial foreclosure sale purchaser LaSalle to Selene via special warranty deed. This additionally distinguishes *Bridges* from the present case.

note omitted.) "[I]n Washington a document that purports to transfer an interest in real property *is not effective until it is acknowledged by a notary public* or other authorized person." *Id*. at 832 (emphasis added). Here, Ward's purported 2004 quitclaim deed is not properly notarized.

"Color of title 'means that the adverse claimant holds or traces back to a title document, usually a deed, that *appears on its face to convey good title*, but that, for some reason that does not appear on its face, did not convey title.'" *Campbell v. Reed*, 134 Wn. App. 349, 358, 139 P.3d 419 (2006) (emphasis added) (quoting WILLIAM B. STOEBUCK & JOHN W. WEAVER, 17 WASHINGTON PRACTICE: REAL ESTATE: PROPERTY LAW § 8.20, at 542 (2d ed. 2004)). As noted, Ward's 2004 quitclaim deed does not "appear on its face" to convey good title given the incomplete notarization. Under these circumstances, the Court of Appeals determination that Ward's quitclaim deed provided her with "color of title" is error.

Moreover, Ward contends that she has superior title because her 2004 quitclaim deed is earlier in time to all subsequent transactions, and because all transactions following the allegedly fraudulent 2005 conveyance from Dorsey to Brooks are necessarily "fraudulent, defective, and void as a matter of law." Am. Opening Br. of Appellant at 7; *see also* Appellant's Resp. to Pet. for Review at 7 (Ward argues that because of the earlier fraud, the foreclosure sale purchaser, LaSalle, had no right, title, and interest in the property to convey to Selene). But Ward ignores that her quitclaim deed is unrecorded and thus invalid against subsequent good faith purchasers under the

facts here. *See* RCW 65.08.070;[8] *see also Levien v. Fiala*, 79 Wn. App. 294, 299-300, 902 P.2d 170 (1995) ("A bona fide purchaser of an interest in real property is entitled to rely on record title; the protection afforded him by the real property recording statute, RCW 65.08.070, is unaffected by the vendor's lack of good faith or by matters of which the vendor has notice." (footnote omitted)); *see also Lind v. City of Bellingham*, 139 Wash. 143, 147, 245 P. 925 (1926) ("a person purchasing real property may rely on the record title to the property, in the absence of knowledge of title in another, or of facts sufficient to put him on inquiry"). Moreover, "[a] circumstance that would lead a person to inquire, however, is only notice of what reasonable inquiry would reveal." *Levien*, 79 Wn. App. at 299. Here, reasonable inquiry (i.e., search of the county deed records) would not show Ward's unrecorded quitclaim deed.[9]

> *Parties who delay recording* their deeds to property until after another has recorded a deed to the same property *have the burden of proving* actual or constructive notice of their interest in property by the other, and if they fail to do so, their prior conveyance is *void* as against that party by virtue of RCW 65.08.070.

---

[8] RCW 65.08.070 provides in part:
> A conveyance of real property, when acknowledged by the person executing the same (the acknowledgment being certified as required by law), may be recorded in the office of the recording officer of the county where the property is situated. *Every such conveyance not so recorded is void as against any subsequent purchaser* or mortgagee in good faith and for a valuable consideration from the same vendor, his or her heirs or devisees, of the same real property or any portion thereof whose conveyance is first duly recorded.

(Emphasis added.)

[9] "'[O]ne searching the index has a right to rely upon what the index and recorded document discloses and is not bound to search the record outside the chain of title of the property presently being conveyed.'" *Valentine v. Portland Timber & Land Holding Co.*, 15 Wn. App. 124, 131, 547 P.2d 912 (1976) (quoting *Koch v. Swanson*, 4 Wn. App. 456, 459, 481 P.2d 915 (1971)).

*Id.* at 300 (emphasis added).[10]

In sum, *Bridges* is distinguishable and the Court of Appeals' reliance thereon is misplaced. The competing deeds in *Bridges* revealed a genuine question regarding title, but this case does not. As discussed, Ward's quitclaim deed does not appear on its face to convey good title, and, in any event, it is unrecorded.[11] Under these circumstances, we resolve this case in accord with *Ndiaye* and *Mink* as discussed above.[12]

## CONCLUSION

Under the circumstances of this case, the Court of Appeals erred in determining that a RCW 61.24.060(1) unlawful detainer action was not available to Selene and that Ward's facially deficient quitclaim deed provided her with color of title rendering unlawful detainer under RCW 59.12.030(6) unavailable. We reverse the Court of Appeals unpublished decision and remand for reinstatement of the trial court's writ of restitution. We deny Ward's request for attorney fees.

---

[10] "'The purpose of the recording statute is to make the deed first recorded superior to any outstanding unrecorded conveyance of the same property unless the mortgagee or purchaser had actual knowledge of the transfer not filed of record.'" *Id.* at 129 (quoting *Tacoma Hotel, Inc. v. Morrison & Co.*, 193 Wash. 134, 140, 74 P.2d 1003 (1938)). Accordingly, "an unrecorded conveyance is void as against a subsequent purchaser in good faith for value from the same vendor of the same property whose conveyance is first recorded." *Id.*

[11] The resolution of Ward's alleged title issues is for Ward to pursue in a separate action. *See Mink*, 49 Wn. App. at 210; *Evans*, 67 Cal. App. 3d at 170-72.

[12] Ward requests costs and statutory attorney fees, citing without discussion RCW 4.84.010, RAP 14.2, and RAP 18.1. Since we reverse the Court of Appeals, Ward is not the prevailing party and no fees are warranted.

No. 92967-0

_Madsen, J._

WE CONCUR:

_Wiggins, J._

_Johnson, J._

_Owens, J._

_Stephens, J._

17

No. 92967-0

YU, J. (dissenting)—The majority holds that the statutory right to bring an unlawful detainer action following a trustee's sale may be transferred to a subsequent purchaser by way of special warranty deed. Majority at 8 ("LaSalle[] [Bank's] ownership rights, which included the right to possess the property, transferred to Selene [RMOF II REO Acquisitions II LLC] via the special warranty deed."). I respectfully disagree. While certainly true that the legislature intended "to preserve the summary nature of foreclosure actions . . . in referring purchasers to the unlawful detainer statutes for the removal of 'reluctant' former owners," it is less clear that the legislature intended for this remedy to exist indefinitely for all subsequent owners. *Sav. Bank of Puget Sound v. Mink*, 49 Wn. App. 204, 208, 741 P.2d 1043 (1987). In fact, the plain language of RCW 61.24.060(1) provides the right to summary proceedings to the purchaser at the trustee's sale—not the purchaser and all heirs, successors, and assigns. If the legislature intended for this right to survive beyond the purchaser, it would have stated as such.

1

The majority and Selene point to a California appellate case for the policy reasons why subsequent purchasers should be permitted to utilize the unlawful detainer process. Majority at 6-7 (citing *Evans v. Superior Court*, 67 Cal. App. 3d 162, 167-68, 136 Cal. Rptr. 596 (1977)). But as the majority points out, that case interpreted California's Code of Civil Procedure § 1161a, which is "silent as to who may bring [unlawful detainer] actions." Majority at 7. This is not so in our own statute. Instead, the right to utilize unlawful detainer proceedings is expressly limited to "[t]he purchaser at the trustee's sale." RCW 61.24.060(1).

Such a limitation makes practical sense given the context of nonjudicial foreclosure sales. The purchaser at a trustee's sale is presumed to have good title because the nonjudicial foreclosure process assures it, provided the sale complied with the statutory foreclosure rules. RCW 61.24.040(7) (recital of facts showing compliance serves as "prima facie evidence of such compliance and conclusive evidence thereof in favor of bona fide purchasers"). Notice of a trustee's sale must be given to a wide range of parties with a potential interest in the property, RCW 61.24.040, and such parties may seek to enjoin the proceedings prior to the sale to challenge ownership. RCW 61.24.130(1). Although failure to pursue presale remedies does not constitute waiver of certain types of claims, the claimant under such circumstances "may not seek any remedy at law or in equity other than

2

monetary damages." RCW 61.24.127(2)(b). The question of ownership is settled following a trustee's sale carried out in compliance with chapter 61.24 RCW.

It is for this reason that purchasers at a trustee sale are permitted to utilize the summary proceedings of unlawful detainer. Certainty of good title exists by virtue of the trustee's deed, but this certainty evaporates for subsequent purchasers. If LaSalle had conveyed the same property back to Vanessa Ward the day before it conveyed the property to Selene, could we still say that Selene's special warranty deed entitled it to summary proceedings to obtain possession?

Further, the majority's decision contains no limiting principle. It happens that Selene is the first subsequent purchaser, but under the court's decision today every new purchaser thereafter would receive the same right to utilize unlawful detainer as if they were themselves the purchaser at the foreclosure sale. Majority at 8-9 ("[B]ecause LaSalle conveyed its entire interest to Selene, Selene may pursue the unlawful detainer action under RCW 61.24.060(1) to obtain possession of the conveyed property."). Twenty years and ten subsequent purchasers later, the holder of a deed on this property would presumably be able to initiate unlawful detainer proceedings by relying on the original trustee's sale. The legislature could not have intended such sweeping consequences.

In the record before us, LaSalle attempted to utilize the unlawful detainer proceedings on two occasions but ultimately abandoned those efforts. Clerk's

3

Papers at 50, 60. Instead, LaSalle sold the property to Selene by special warranty deed in 2012. Doing so extinguished LaSalle's statutory right to utilize the unlawful detainer proceedings through RCW 61.24.060(1). *See Fed. Nat'l Mortg. Ass'n v. Ndiaye*, 188 Wn. App. 376, 384, 353 P.3d 644 (2015) ("[U]nlawful detainer is available to one who holds a title as a purchaser at a deed of trust foreclosure sale.").

Accordingly, Selene must rely on the provisions of the unlawful detainer statute itself—specifically, RCW 59.12.030(6). Under this provision, Selene must show that Ward remained on the property "without the permission of the owner and without having color of title thereto." RCW 59.12.030(6). Ward presents color of title by way of her signed, partially notarized deed. Had this case proceeded under RCW 59.12.030(6), the trial court would have either dismissed the unlawful detainer action or converted the proceedings to a quiet title action so that the question of ownership could be fully litigated. *See Munden v. Hazelrigg*, 105 Wn.2d 39, 41, 711 P.2d 295 (1985); *Puget Sound Inv. Grp., Inc. v. Bridges*, 92 Wn. App. 523, 527, 963 P.2d 944 (1998).

Instead, the majority states that Ward "is foreclosed from asserting her title challenge" because "the appropriate time to assert such challenge was prior to foreclosure." Majority at 11. Our jurisprudence on this point is clear and certainly may have determined the outcome of a quiet title action. Nevertheless, this

4

holding highlights another concern: that the remedies available to protect against wrongful foreclosures are insufficient, particularly for low-income homeowners faced with the daunting task of enjoining a trustee's sale without the aid of legal counsel.

Ward's story is not unique in this regard. She seemingly attempted to assert her challenge at the appropriate time, but her case was dismissed before the court could adjudicate the merits. Am. Verbatim Report of Proceedings at 18, 21. The remedies provided under chapter 61.24 RCW are not crafted for the pro se homeowner in mind, resulting in prejudice against those low-income homeowners most at risk of foreclosure. If Ward had had the benefit of legal counsel, this case may have unfolded quite differently.

This lack of legal counsel is critical because RCW 61.24.130(1) does not provide the same protections as the unlawful detainer statute. Under RCW 59.12.030(6), color of title is sufficient to halt the summary proceedings to first resolve the issue of ownership. The trial court acts as a safeguard for the rights of the homeowner whose title may have been fraudulently transferred to the party seeking possession. On the other hand, in nonjudicial foreclosure proceedings, the burden rests with the homeowner to bring a lawsuit enjoining the trustee's sale. While this certainly avoids "'time-consuming judicial foreclosure proceedings'" and "'save[s] substantial time and money to both the buyer and the lender,'" the

lack of judicial oversight carries real consequences that may not, in practice, be alleviated by the remedy provided under RCW 61.24.130(1). Majority at 6 (quoting *Peoples Nat'l Bank of Wash. v. Ostrander*, 6 Wn. App. 28, 31, 491 P.2d 1058 (1971)). A remedy that few can reasonably access in practice is no remedy at all.

In sum, Selene had no statutory right to utilize unlawful detainer proceedings through RCW 61.24.060(1). That right lay with LaSalle alone and disappeared the moment LaSalle conveyed the property to a new owner. Selene could access unlawful detainer proceedings only through RCW 59.12.030(6), and Ward's signed, partially notarized deed gave her color of title sufficient to halt those proceedings. It may be, in a separate quiet title action, that Selene's chain of title prevails on account of Ward failing to enjoin the nonjudicial foreclosure proceedings in 2009. Nevertheless, these facts highlight the very real possibility that low-income homeowners cannot reasonably access the statutory remedies designed to prevent wrongful foreclosures. For these reasons, I respectfully dissent.

_____

Yu, J.

González, J.

Fairhurst, C.J.

Gerdes McCloud, J.